**COHEN MILSTEIN SELLERS & TOLL PLLC**
MICHAEL B. EISENKRAFT (ME6974)
meisenkraft@cohenmilstein.com
88 Pine Street
14th Floor
New York, NY 10005
Telephone:  (212) 838-7797
Facsimile:  (212) 838-7745

*Additional Plaintiffs' Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK
# BROOKLYN DIVISION

| | |
|---|---|
| **YESENIA ARIZA** and **DAVID SOUKUP**, individually and on behalf of others similarly situated, | <u>**CLASS ACTION**</u> |
| Plaintiffs, | CASE NO. |
| v. | |
| **LUXOTTICA RETAIL NORTH AMERICA**, an Ohio corporation d/b/a LensCrafters, | |
| Defendant. | |

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs Yesenia Ariza and David Soukup, individually, and on behalf of all others similarly situated, hereby file suit against the Defendant listed above and allege the following:

## INTRODUCTION

1.      Plaintiffs and class members purchased prescription eyeglasses from LensCrafters after being measured using the Accufit® Digital Measurement System ("Accufit") offered at LensCrafters.  LensCrafters touts its Accufit system as providing uniquely accurate measurements of the pupillary distance ("PD")[1] between the customer's eyes to locate the optical centers of the eyeglass lenses. LensCrafters advertises that its Accufit system "measures your eyes five times more precisely than traditional methods, down to a tenth of a millimeter" – roughly the width of a human hair.[2]  LensCrafters claims that this allows the company to manufacture prescription eyeglasses "which provides a lens fit with five times greater precision than traditional methods."[3]  Thus, LensCrafters promises better prescription eyeglasses that allow customers "to see your world more clearly," as "[y]our lenses are crafted based on exactly how glasses sit on your face, where your eyes line up in the frame, and the distance between your eyes—putting the prescription exactly where you need it to see your best."[4]

2.      However, LensCrafters cannot and does not deliver what it promises.  Even assuming its Accufit system can provide PD measurements down to a tenth of a millimeter, when

---

[1] Pupillary distance ("PD") or interpupillary distance ("IPD") is the distance between the centers of the pupils in each eye.  The industry standard is to measure in millimeters. This measurement is used when manufacturing prescription eyeglasses.

[2] https://www.lenscrafters.com/lc-us/accufit (accessed August 28, 2017).

[3] http://www.luxottica.com/en/retail-brands/lenscrafters (accessed August 28, 2017).

[4] https://www.lenscrafters.com/lc-us/accufit (accessed August 28 2017).

it manufactures prescription eyeglasses, LensCrafters uses decades-old technology that still involves manual measurements that must be rounded up to a full millimeter.  Indeed, Lenscrafters' Accufit system provides no more accuracy in manufacturing prescription eyeglasses than when measuring PD with a standard ruler.

3.     This fact is known among LensCrafters' employees.  When customers arrive at a LensCrafters store, employees are trained to push the Accufit system as a selling point, telling customers that Accufit ensures more accurate prescription eyeglasses and emphasizing to customers that they can only use Accufit measurements at LensCrafters.  When customers ask about the Accufit system and whether it will really make their prescription eyeglasses more accurate, LensCrafters trains its employees to avoid answering the question, and to reiterate that Accufit provides PD measurements that are "five times more accurate."

4.     Because LensCrafters' manufacturing process uses the *same* decades-old traditional methods, the end-product sold to customers cannot and does not have PD measurements that are "five times" more accurate than traditional methods.

5.     Customers are therefore induced to purchase prescription eyeglasses from LensCrafters when they otherwise would not have and/or overpay for prescription eyeglasses from LensCrafters based on false and misleading statements, and suffer damages.

## PARTIES

6.     Plaintiff Yesenia Ariza is a citizen and resident of New York, over the age of eighteen years.  Plaintiff purchased prescription eyeglasses from LensCrafters after being measured by Accufit in or about September 2016 for approximately $500.  At the same time, Plaintiff Ariza purchased additional products and services from LensCrafters totaling approximately $50.

7.     Plaintiff David Soukup is a citizen and resident of New York, over the age of eighteen years.  Plaintiff purchased prescription eyeglasses, among other products and/or services, from LensCrafters after being measured by Accufit in or about July 2015 for approximately $750.

8.     Defendant Luxottica Retail North America d/b/a LensCrafters ("LensCrafters") is a citizen and resident of Ohio which regularly does business in New York and all over the United States.  LensCrafters is headquartered at 4000 Luxottica Place, Mason, OH 45040.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction for this case pursuant to 28 U.S.C. § 1332(d), as it is a class action for damages that exceed $5,000,000, exclusive of interest and costs.  Because named Plaintiffs are residents of New York, members of the classes are residents of a state different from Defendant, who is incorporated and/or headquartered in Ohio.

10.     This Court has personal jurisdiction over Defendant because of its continuous and systematic business contacts with the State of New York, including the fact that LensCrafters maintains at least one corporate office in New York, has over 50 stores in New York, and derives substantial revenue from sales of its products in New York, with knowledge that its products are being marketed and sold for use in this State.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this district.

## FACTUAL ALLEGATIONS

**A.     The Eyeglass Industry and Manufacturing Process for Prescription Lenses**

12.     LensCrafters is a national eye care provider and prescription eyeglass

manufacturer maintaining over 900 locations in the United States with optical labs on-site.[5]  The company was founded in 1983 and began to operate as a subsidiary of Luxottica Retail North America, Inc. in approximately 1995.  LensCrafters is one the largest companies in the $28 billion worldwide ophthalmic industry.[6]  In 2013, LensCrafters was estimated to serve more than four million customers each year and described itself as the "single most powerful player in the optical category . . ."[7]  Its sales exceeded $1.8 billion in 2013.[8]

13.     The process for fabricating prescription eyeglasses typically begins with lens "blanks," which are thick, clear blocks made of either glass or polymers.  After receiving a prescription order, a laboratory technician will select lens blanks that correspond to the prescription for each lens.

14.     A protective layer of adhesive tape is then applied to each lens blank to protect it from damage during the manufacturing process.

15.     The laboratory technician then attaches what is known as a "block" to the front of each lens blank.  Each lens, still attached to the block, is then placed in a machine called a blocker, which can be manual or digital.

16.     The blockers contain a heated metal alloy that melds each blocker to the front of each lens blank.  This process ensures that lenses are securely mounted and correctly positioned for the machining process (including surfacing, polishing and engraving).  The blocking process

---

[5] http://www.cincinnati.com/story/money/2017/01/16/mason-based-lenscrafters-now-part-new-european-eyewear-giant/96633222/ (accessed August 28, 2017).

[6] https://www.forbes.com/sites/anaswanson/2014/09/10/meet-the-four-eyed-eight-tentacled-monopoly-that-is-making-your-glasses-so-expensive/#1ebf22bb6b66 (accessed August 28, 2017).

[7] http://www.luxottica.com/sites/luxottica.com/files/2013_10_08_-_luxottica_investor_day_-_transcript.pdf (accessed August 28, 2017).

[8] *Id.*

is critical because it is "not only the start, but also the cornerstone of the entire lens production process"[9] and, ultimately, the accuracy of a lens, "as the accuracy of the lens block directly influences the machining accuracy . . ."[10]

17.     After securing the lens blanks to the blocks, the laboratory technician locates and marks the optical center of each lens blank.  The optical center is the point where vision is best in the lens and is centered over the customer's pupil.

18.     Laboratory technicians use the customer's pupillary distance measurement(s) to locate the optical center of each lens.

19.     After blocking, the lens blanks (still attached to the blocks) are attached to a lens generator and aligned.  The lenses are ground until attaining the desired thickness and curves based on the individual's prescription.

20.     The lenses are then placed in a surfacing machine to remove any marks left by the generator through a process called "fining" or "edging."  When fining is complete, lenses are polished by another machine.

21.     The technician then removes the lens block before conducting any final inspections or lens enhancements such as an anti-reflective enhancement or scratch resistance.

22.     Finally, the lenses are placed in the frame and delivered to the customer.

**B.     LensCrafters and Its "Accufit" System**

23.     LensCrafters initially marketed itself as unique among prescription eyeglass

_____
[9]

http://www.satisloh.com/fileadmin/contents/brochures/Ophthalmic/Blocking_and_deblocking/Blocking_Overview_2016_EN.pdf; https://www.google.ch/patents/US7946325?hl=de (accessed August 28, 2017).

[10] *Id*.

manufacturers for its ability to manufacture glasses within one hour.[11]  However, LensCrafters has not been able to fulfill its one-hour promise and has shifted its advertising away from that campaign.[12]

24.     In or about 2009 and no later than 2011, LensCrafters introduced its Accufit Digital Measurement System.[13]

25.     According to LensCrafters, Accufit is "5 times more precise" than manual PD measurements and "measures the exact location of your pupils, the spacing of your eyes, and the shape of your glasses so [LensCrafters] can place your prescription in your lenses exactly where you need it to see your best."[14]

26.     The Accufit system is a process that involves attaching a "fit sensor" to the frames selected by customers and using cameras and lasers to take measurements, including PD (the distance between the pupils).

27.     LensCrafters claims that the Accufit system measures down to the tenth of a millimeter – which is roughly the width of a human hair – and that these measurements allow LensCrafters to manufacture prescription eyeglass that are far more accurate than prescription eyeglasses manufactured based on traditional PD measurements.  According to LensCrafters, its

---

[11] https://www.lenscrafters.com/lc-us/about-lenscrafters?sid=OurVisionDD-LeftLink-AboutLC-US-112413 (accessed August 28, 2017).

[12] LensCrafters' website now states that "[i]n select locations, we may be able to make your glasses same-day or in about an hour.  The ability to do so depends upon your particular prescription, the frame you choose, the lenses and options you select, and whether the store you visit has an onsite lab.  If you are looking for same-day service, please let our store associates know so they can direct you toward options that they may be able to complete in-house.  To accommodate the many product enhancements that are now available, special processing is sometimes required.  These orders are typically processed within 7-14 business days." http://www.lenscrafters.com/lc-us/customer-service/faq (accessed August 28, 2017).

[13] Confidential Witness 1, Former LensCrafters Licensed Laboratory Manager ("CW 1"); Confidential Witness 2, Former LensCrafters Licensed Laboratory Manager and Former General Manager ("CW 2.").

[14] https://www.lenscrafters.com/AccuFit (accessed August 28, 2017).

Accufit technology "is fully integrated with [its] lens manufacturing system, so that [LensCrafters] can collect all the data and [it] can provide manufacturing of perfect customized lenses."[15]

28.     Accufit became a central component of LensCrafters' marketing strategy.  Indeed, through television commercials, online advertising, in-store marketing, and in-store employee sales pitches, Accufit is touted as the differentiating feature for LensCrafters and the reason why customers should purchase their prescription eyeglasses from LensCrafters.

29.     For example, on its website, LensCrafters tells customers and potential customers that the difference between traditional measurements and its Accufit system is "massive:"



[Text reads:  "WHY A TENTH OF A MILLIMETER IS MASSIVE" and "Accufit® is our exclusive digital scanning system that measures your eyes five times more precisely than traditional methods, down to a tenth of a millimeter.  This means we can craft lenses more accurately and help you see the world more clearly."][16]

30.     LensCrafters' website goes on to state that:

**The old way will never
measure up.**

---

[15] http://www.luxottica.com/sites/luxottica.com/files/2013_10_08_-_luxottica_investor_day_-_transcript.pdf (accessed August 28, 2017).

[16] http://www.businesswire.com/news/home/20140130005961/en/LensCrafters-Takes-Stand-Quality-Vision-Care-Global (accessed August 28, 2017).

> Goodbye rulers, hello super hi-tech future machines. The
> LensCrafters AccuFit system replaces old-fashioned hand-held
> measuring tools with a state-of-the-art digital system that is 5
> times more precise.
>
> . . .
>
> Accufit digitally measures the exact location of your pupils, the
> spacing of your eyes, and the shape of your glasses so we can
> place your prescription in your lenses exactly where you need
> it to see your best.
> It's time to see what you're missing.[17]

31.     LensCrafters' parent company's corporate website states that the Accufit system results in more accurate lenses:  "LensCrafters has made significant investments in technology including AccuFit Digital Measurement™, which provides a lens fit with five times greater precision than traditional methods."[18]

32.     LensCrafters makes similar representations in its filings with the Securities and Exchange Commission:  The "Accufit Digital Measurement™ . . . provides a lens fit with five times greater precision than traditional methods . . ."[19]

33.     LensCrafters also touts its Accufit system in its stores, prominently displaying advertisements for Accufit, including its purported "5X" greater accuracy in measuring pupillary distance and its supposed benefits in making a customers' prescription eyeglasses more accurate:

---

[17] https://www.lenscrafters.com/AccuFit (accessed August 28, 2017).

[18] http://www.luxottica.com/en/retail-brands/lenscrafters) (accessed August 28, 2017).

[19] http://sec.edgar-online.com/luxottica-group-spa/20-f-annual-and-transition-report-foreign-private-issuer/2014/04/29/section6.aspx (accessed August 28, 2017).



34.     This type of visual advertising is particularly important to LensCrafters' business model, as "[m]ost LensCrafters stores are located in high-traffic commercial malls and shopping centers."[21]

35.     In addition, LensCrafters' store employees were instructed to push the Accufit system by telling customers that its measurements were five times more accurate and that they should buy their prescription eyeglasses from LensCrafters because Accufit would make their prescription eyeglasses more accurate.

36.     Store employees understood the emphasis on Accufit to be the result of LensCrafters' inability to manufacture prescription eyeglasses in one hour, its previous key sales pitch.[22]

37.     Contrary to LensCrafters' representations, however, the Accufit system does not

---

[20] http://www.tuttleeye.com/files/2014/01/photo.jpg (accessed August 28, 2017).

[21] http://www.luxottica.com/en/retail-brands/lenscrafters (accessed August 28 2017).

[22] CW 1; CW 2.

lead to more accurate prescription eyeglasses.

38.     Even assuming the Accufit technology is, as advertised, five times more accurate than manual measurements,[23] LensCrafters cannot and does not translate the measurements taken from the Accufit system into its manufacturing process.  Without the ability to translate supposedly more accurate measurements into the manufacturing process, LensCrafters' Accufit system is no more effective in making prescription eyeglasses accurate than using a standard ruler to measure PD.

39.     Indeed, it was common knowledge among LensCrafters' employees that the Accufit system provided no benefit in making prescription eyeglasses more accurate because LensCrafters' manufacturing equipment cannot measure beyond one millimeter, which is the same measuring capability as a standard ruler.[24]

40.     For example, Confidential Witness 1, a former LensCrafters Licensed Laboratory Manager, who worked at the company for approximately 16 years states that:  "Despite hyping the Accufit measuring system and its more accurately crafted glasses, the LensCrafters stores never changed their equipment for manufacturing the glasses."  In 2011, this former Laboratory Manager asked the LensCrafters store's General Manager "when LensCrafters would update its laboratory equipment so that our glasses could be manufactured to one-tenth of a millimeter." He responded that "LensCrafters had no such plans."

41.     Rather than updating its laboratory equipment to more expensive, state-of-the-art machines that can use digital measurements, LensCrafters continued to use decades-old

---

[23] This claim is dubious given the fact that skilled opticians use "their professional experience to evaluate your fitting needs based on many parameters that a machine cannot discern, such as your posture."  https://www.specsoptical.com/lab/ (accessed August 28, 2017).

[24] CW 1; CW 2.

equipment that is only capable of making use of manual measurements.

42.     According to confidential witnesses, in particular, many of LensCrafters'
laboratories, including its large, regional laboratories, use Coburn CS7 blockers, which were first
sold in the 1970s and are no longer manufactured.  The Coburn CS7 blockers require the
laboratory technician to lay out manually the lenses on a one-millimeter grid for the finished
layout process.  This is the step used for the pupillary distance measurement.  Therefore, even if
Accufit provided a measurement of one-tenth of a millimeter, LensCrafters employees could not
lay out the lenses to one-tenth of a millimeter.

43.     Even though Accufit provides no benefit in the manufacturing of prescription
eyeglasses, according to confidential witnesses, LensCrafters employees were instructed to use
Accufit as a selling point by touting its supposed accuracy in measuring pupillary distance, that it
would make customers' prescription glasses more accurate, and that customers could only use
the Accufit measurements at LensCrafters.

44.     Further, according to confidential witnesses, LensCrafters also instructed
employees to avoid discussing the manufacturing process when customers asked questions about
Accufit.  Instead, LensCrafters trained employees to keep emphasizing that Accufit was "five
times more accurate" in determining PD measurements.

45.     Notwithstanding these directives, LensCrafters knows that Accufit provides no
benefits and cannot be translated into the actual manufacturing process.  For example, according
to confidential witnesses, frequently after showing a customer his or her Accufit measurement,
the LensCrafter associate doing the Accufit measurement will simply round the result to a whole
millimeter before sending the results to the laboratory.  And, even if the full tenth-of-a-
millimeter measurements are sent to the laboratory, a technician in the laboratory will round the

number before placing the lenses on a blocker, because LensCrafters equipment can only measure to a whole millimeter.

46.     LensCrafters employees know that laboratory equipment does not have the capability to craft eyeglasses with pupillary distance measurements that are accurate down to one-tenth of a millimeter, and that the use of the Accufit measurement system is not beneficial. And, many of them are frustrated by the company's false and misleading statements regarding the Accufit system.  For example, during a training session conducted by Confidential Witness 1, a new laboratory technician observed that LensCrafters does not have laboratory equipment to craft lenses with pupillary distance measurements that are accurate down to one-tenth of a millimeter.  The trainee reacted by saying, "so it's all a big lie."

47.     On information and belief, everyone who purchased prescription eyeglasses from LensCrafters during the proposed Class Period (defined below) was measured using Accufit.

### C. Plaintiffs' Experiences

#### a.      *Yesenia Ariza*

48.     Plaintiff Yesenia Ariza purchased prescription eyeglasses after being measured with Accufit in New York, New York in or about September 2016.

49. Prior to her purchase, Ms. Ariza heard about the Accufit system based on a LenCrafters advertisement.

50.     Upon entering the store, Ms. Ariza spoke with a LensCrafters employee who told her that the Accufit "machine" was "better" and more precise than traditional methods.

51.     Ms. Ariza would not have purchased her prescription glasses from LensCrafters and/or would not have paid as much as she did had she known that its claims that Accufit is "five times more accurate" was not translated into the manufacture of her lenses.

           **b.**      ***David Soukup***

52.     Plaintiff David Soukup purchased prescription glasses after being measured with Accufit in New York, New York in or about September 2015.

53.     Mr. Soukup shopped at a LensCrafters near his office and spoke with an employee who simulated the Accufit system, which impressed him.  Mr. Soukup discussed his lens choice in detail with the employee, and Accufit played a role in that decision as well as his decision regarding which frames to purchase.

54.     Mr. Soukup would not have purchased his prescription glasses from LensCrafters and/or would not have paid as much as he did had he known that its claims that Accufit is "five times more accurate" was not translated into the manufacture of his lenses.

<u>**CLASS ALLEGATIONS**</u>

55.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 54.

56.     Pursuant to the Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs seek a statewide class consisting of all residents of New York who purchased prescription eyeglasses from LensCrafters from September 5, 2011 to present (the "Class" and the "Class Period," respectively).

57.     Excluded from the Class are the Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

58.     This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements.

Plaintiffs seek to represent an ascertainable Class, as determining inclusion in the class can be done through the Defendant's own records.

59.   Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

60.   Although the precise number of Class members is unknown and can only be determined through appropriate discovery, Plaintiffs believe, and on that basis allege, that the proposed Class is so numerous that joinder of all members would be impracticable as Defendant has sold thousands of prescription eyeglasses measured using Accufit in New York during the proposed Class Period.

61.   Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including *inter alia*:

a.   Whether Defendant misrepresented material facts about its manufacturing process, including the fact that Accufit measurements could not be converted into the manufactured lenses;

b.   Whether Defendant omitted material facts about its manufacturing process, including the fact that Accufit measurements could not be converted into the manufactured lenses;

c.   Whether Defendant engaged in deceptive acts or practices, including misrepresenting and/or omitting the fact that Accufit measurements could not be converted into the manufactured lenses; and

d.   Whether Defendant falsely advertised its manufacturing process at the time of sale, including the fact that Accufit measurements could not be converted into the manufactured

lenses.

62.     Plaintiffs are members of the putative Class. The claims asserted by the Plaintiffs in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendant and the relief sought is common.

63.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Class, as their interests coincide with, and are not antagonistic to, the other Class members. Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

64.     Certification of the Class is appropriate pursuant to Fed. R. C. P. 23(b)(2) and (b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

65.     A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

66.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any

difficulties that might be argued with regard to the management of the class action.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF NY GENERAL BUS. LAW § 349, *et seq.*

67.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 66.

68.     N.Y. General Bus. L. § 349, *et seq.* ("GBL § 349") prohibits "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in [New York]."

69.     As fully alleged above, throughout the Class Period, by advertising, marketing, distributing, and/or selling prescription eyeglasses with claims that they were "five times more accurate" to Plaintiffs and other Class members, Defendant engaged in, and continues to engage in, deceptive acts and practices because its prescription eyeglasses are not in fact "five times more accurate."

70.     Additionally, throughout the Class Period, by failing to disclose that its prescription eyeglasses were not "five times more accurate" to Plaintiffs and other Class members, Defendant engaged in, and continues to engage in, deceptive acts and practices.

71.     Plaintiffs and other Class members seek to enjoin such unlawful, deceptive acts and practices as described above.  Each of the Class members will be irreparably harmed unless the unlawful, deceptive actions of Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise that its prescription eyeglasses are "five times more accurate" and fail to disclose that its prescription eyeglasses are not in fact "five times more accurate."

72.     Defendant's marketing and advertising of Accufit was likely to mislead

reasonable consumers acting reasonably under the circumstances.

73.    Defendant's omission of the material fact that its prescription eyeglasses were not "five times more accurate" was likely to mislead reasonable consumers acting reasonably under the circumstances.

74.    Plaintiffs would not have purchased prescription eyeglasses from LensCrafters and/or would not have paid as much for them had they known the prescription eyeglasses were not "five times more accurate."

75.    Plaintiffs were injured in fact and lost money as a result of Defendant's conduct of improperly describing its prescription eyeglasses as "five times more accurate."  Plaintiffs paid for "five times more accurate" prescription eyeglasses, but did not receive such products. The products Plaintiffs received were worth less than the products for which they paid.

76.    Plaintiffs and Class members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under GBL § 349.

## COUNT II

### VIOLATION OF NY GENERAL BUS. LAW § 350, *et seq.*

77.    Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 66.

78.    N.Y. General Bus. L. § 350, *et seq*. ("GBL § 350") makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York unlawful.  GBL § 350 provides that "[i]n determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by

statement, word, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescription in said advertisement, but also any such conditions as are customary and usual."

79.     Throughout the Class Period, by advertising, marketing, and/or selling its prescription eyeglasses with claims that they were "five times more accurate" to Plaintiffs and other Class members, Defendant engaged in, and continues to engage in, false advertising concerning the accuracy of its prescription eyeglasses.

80.     Plaintiffs and other Class members seek to enjoin such false advertising as described above.  Each of the Class members will be irreparably harmed unless the unlawful actions of Defendant are enjoined in that Plaintiffs will continue to be unable to rely on Defendant's representations regarding the accuracy of its prescription eyeglasses.

81.     Defendant's marketing and advertising of Accufit was likely to mislead reasonable consumers acting reasonably under the circumstances.

82.     Plaintiffs would not have purchased prescription eyeglasses from LensCrafters and/or would not have paid as much for them had they known the prescription eyeglasses were not "five times more accurate."

83.     Plaintiffs were injured in fact and lost money as a result of Defendant's conduct of improperly describing its prescription eyeglasses as "five times more accurate."  Plaintiffs paid for products that were "five times more accurate," but did not receive such products.  The products Plaintiffs received were worth less than the products for which they paid.

84.     Plaintiffs and Class members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from

continuing to disseminate its false and misleading statements, and other relief allowable under GBL § 350.

## COUNT III

### QUASI-CONTRACT (UNJUST ENRICHMENT)

85.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 66.

86.     Plaintiffs purchased prescription lenses from Defendant as a direct result of Defendant's misrepresentations about its ability to convert Accufit measurement system results into eyeglasses that are "five times more accurate."

87.     Defendant generated profits from its misconduct.

88.     Defendant has knowingly and unjustly enriched itself at the expense and to the detriment of the Plaintiffs and each member of the Class by collecting money to which it is not entitled.

89.     It would be morally wrong to permit the Defendant to enrich itself at the expense of the Plaintiffs and the Class.  Defendant should be required to disgorge this unjust enrichment.

## COUNT IV

### FRAUDULENT MISREPRESENTATION

90.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 66.

91.     Defendant made representations about its prescription eyeglasses that were materially false and that Defendant knew were materially false.  These statements include, *inter alia*, that its prescription eyeglasses were "five times more accurate" because they were measured with the Accufit® Digital Measurement System.  Defendant made these

representations in its advertising (online, in-store, and on television), through its employees, and on its website.

92.     Defendant's statements were made to induce Plaintiffs to rely on them, which Plaintiffs justifiably did.

93.     As a result of Defendant's fraud, Plaintiffs were induced to purchase the Defendants' lenses, or paid more than they would have, and thereby suffered injury.

<b><u>COUNT V</u></b>

<b>FRAUDULENT OMISSION</b>

94.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 66.

95.     Defendant omitted material information that its prescription eyeglasses with an intent to defraud, knowledge of falsity, or a reckless disregard for the truth.  These omission include, *inter alia*, that its prescription eyeglasses were "five times more accurate" because they were measured with the Accufit® Digital Measurement System.  Defendant's material omission occurred in its advertising (online, in-store, and on television), through its employees, and on its website.

96.     Defendant's omissions of material information were intended to induce Plaintiffs to rely on incorrect information, which Plaintiffs justifiably did.

97.     As a result of Defendant's fraud, Plaintiffs were induced to purchase the Defendants' lenses, or paid more than they would have, and thereby suffered injury.

<b>PRAYER FOR RELIEF</b>

**WHEREFORE,** Plaintiffs request judgment against the Defendant for themselves and the members of the class as follows:

A.     Certification of the requested Classes pursuant to Fed. R. Civ. P. 23(b)(2)

- 20 -

or (b)(3);

      B.      Restitution of all charges paid by Plaintiffs and the Class;

      C.      Disgorgement to Plaintiffs and the Class of all monies wrongfully obtained and retained by Defendant;

      D.      Compensatory and actual damages in an amount according to proof at trial;

      E.      Statutory damages, penalties, treble damages, as provided by law;

      F.      Prejudgment interest commencing on the date of payment of the charges and continuing through the date of entry of judgment in this action;

      G.      Costs and fees incurred in connection with this action, including attorney's fees, expert witness fees, and other costs as provided by law;

      H.      Punitive damages;

      I.      Equitable relief;

      J.      Injunctive relief; and

      K.      Granting such other relief as the Court deems proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby request a jury trial for all issues so triable of right.

DATED this 5th day of September, 2017.

                  Respectfully submitted,


                  */s/  Michael B. Eisenkraft*

                  Michael B. Eisenkraft (ME-6974)
                  **COHEN MILSTEIN SELLERS**
                    **& TOLL PLLC**
                  88 Pine Street

14th Floor
New York, NY 10005
Telephone:  (212) 838-7797
Facsimile:  (212) 838-7745

Theodore J. Leopold (to file *pro hac vice*)
**COHEN MILSTEIN SELLERS**
 **& TOLL PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL  33410
Telephone:  (561) 515-1400
Facsimile:  (561) 515-1401

Andrew N. Friedman (to file *pro hac* vice)
Geoffrey A. Graber (to file *pro hac vice*)
Douglas J. McNamara (DM-6069)
Sally M. Handmaker (to file *pro hac vice*)
**COHEN MILSTEIN SELLERS**
 **& TOLL PLLC**
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408-4699

Robert Gordon, Esq (to file *pro hac vice*)
Steve Calamusa, Esq. (to file *pro hac vice*)
**GORDON & DONER**
4114 Northlake Blvd.,
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050

***Attorneys for Plaintiffs***