UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
THOMAS ALLEGRA, YESENIA ARIZA,
MARIANA ELISE EMMERT, STUART
ROGOFF, GRACELYNN TENAGLIA, and
MELISSA VERRASTRO, individually and on         **MEMORANDUM & ORDER**
behalf of others similarly situated,                              17-CV-05216 (PKC) (RLM)

                Plaintiffs,

    - against -

LUXOTTICA RETAIL NORTH AMERICA
d/b/a LensCrafters,

                Defendant.
-----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Before the Court is the motion of Defendant Luxottica Retail North America, doing business as LensCrafters ("LensCrafters"), to seal or redact certain documents and information submitted with the parties' class certification and *Daubert* briefing. (Dkt. 257.) Plaintiffs oppose LensCrafters' motion. (Dkt. 259.) For the reasons explained, the Court grants in part and denies in part LensCrafters' motion.

On May 14, 2018, the Court so ordered a joint Protective Order proposed by the parties. (5/14/2018 Docket Order; Dkt. 45.) Pursuant to the Protective Order, the parties may designate as "Confidential" any information, document, or thing, or portion thereof, that, *inter alia*, "contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information." (Dkt. 45, ¶ 1); *see* Fed. R. Civ. P. 26(c)(1)(G). LensCrafters now seeks to keep confidential two categories of information that they argue were contemplated by this provision of the Protective Order. First, "manufacturing-related information, including Luxottica's proprietary Quality Manufacturing Standards as well as the results of capability studies

1

that analyzed confidential output data from eyeglasses manufactured in the normal course of business." (Dkt. 257, at 1.) Second, "internal, confidential business communications discussing LensCrafters' product development and testing, employee training, customer experience and sales strategies, advertising strategies, and marketing claim support." (*Id.*) In support of the request for redactions and sealing, LensCrafters provides the sworn declarations of two Luxottica employees, David Persinger and Jason Jones, who declare, in sum, that the documents and information at issue are confidential and proprietary, and that disclosure "could be capitalized upon by Luxottica's competitors, causing harm to Luxottica." (Dkt. 257, at 1; Persinger Decl., Dkt. 257-2; Jones Decl., Dkt. 257-3.)

## LEGAL STANDARD

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). Under the First Amendment analysis, the court must first determine "whether 'experience and logic' support making the document available to the public," which involves considering "whether the documents 'have historically been open to the press and general public' (experience)" and "whether 'public access plays a significant positive role in the functioning of the particular process in question' (logic)."[1] *United States v. Erie County, N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006)). If the court finds that the First Amendment right to access judicial documents attaches, then "the

---

[1] An additional approach to determining whether the public should have First Amendment protection in their attempts to access certain judicial documents "considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (brackets, quotation marks, and citation omitted).

documents 'may be sealed only if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (brackets omitted) (quoting *Lugosch*, 435 F.3d at 120).

Under the Second Circuit's common law right of public access, the court first determines whether the document is a "judicial document" by considering whether it is "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quoting *Lugosch,* 435 F.3d at 119). Should the court conclude that the document is a "judicial document," then it must "determine the weight" of the presumption of public access, *id.* (quoting *Lugosch,* 435 F.3d at 119), which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts," *id.* (quoting *United States v. Amodeo,* 71 F.3d 1044, 1049 (2d Cir. 1995)). Finally, the court will balance the "weight of the presumption of access" with "competing considerations against disclosure." *Id.* (brackets omitted) (quoting *Lugosch*, 435 F.3d at 120). Access should be denied only if competing interests outweigh the presumption of access. *Id.*

## DISCUSSION

Before determining whether disclosure of the documents and information identified in LensCrafters' motion is required, the Court must determine whether these documents are, in fact, "judicial documents." *Erie County, N.Y.*, 763 F.3d at 239–40. The Court concludes that they are because they are offered in support of the parties' class certification and *Daubert* briefs. As such, these documents are highly "relevant to the judicial function and useful to the judicial process in probing behind the pleadings to determine whether the plaintiff's suit meets the special criteria set forth in Rule 23 for class certification." *Tropical Sails Corp. v. Yext, Inc.*, No. 14-CV-7582 (JFK), 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016); *see Bowling v. Johnson & Johnson*, No. 17-CV-3982 (AJN), 2019 WL 1760162, at *8 (S.D.N.Y. Apr. 22, 2019) (finding that documents

3

submitted in support of class certification motion are "judicial documents"); *Mark v. Gawker Media LLC*, No. 13-CV-4347 (AJN), 2015 WL 7288641, at *2 (S.D.N.Y. Nov. 16, 2015) (same).

Next, the Court finds that under both common law and the First Amendment these documents are afforded a strong presumption of public access. The weight of this presumption is not based on the extent to which the Court may reference or rely on any of these documents in deciding the class certification and *Daubert* motions. *See Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019) (explaining that the Circuit has "expressly rejected the proposition that different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving a motion for summary judgment" (brackets, quotation marks, and citation omitted)). Rather, the strength of the presumption "arises from . . . the public's interest in monitoring the judiciary's exercise of its powers under Article III," and exists "even in private business disputes," and particularly where the documents relate to matters of public concern. *Alcon Vision, LLC v. Lens.com*, No. 18-CV-407 (NG) (RLM), 2020 WL 3791865, at *4 (E.D.N.Y. July 7, 2020). "Class actions are by definition of public interest because some members of the public are members of the case, [thus] 'the standards for denying public access to the record' should [] be strictly construed." *Grayson v. Gen. Elec. Co.*, No. 13-CV-1799 (WWE), 2017 WL 923907, at *1 (D. Conn. Mar. 7, 2017) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)). The Court finds that here, in the context of a class action alleging deceptive advertising about a consumer good, there is a strong presumption of public access to the documents filed in support of the parties' briefs.

Finally, the Court weighs the strong presumption of access against competing concerns about the disclosure of the documents and information.

## I.     Confidential and Proprietary Manufacturing Information

LensCrafters seeks to seal or redact three categories of purportedly confidential and proprietary manufacturing information. (Dkt. 257, at 2–3.)

### A.     Luxottica's Internal Quality Manufacturing Standards

LensCrafters seek to keep under seal its technical Quality Manufacturing Standards and to redact references to Luxottica's internal manufacturing tolerances. (Dkt. 257, at 2.) In support of this request, David Persinger, who is Director of Engineering at Luxottica America, Inc., explains that these standards and tolerances, "which govern Luxottica's fabrication of prescription eyeglasses sold to customers," are "proprietary to Luxottica and are not industry standards and tolerances." (Persinger Decl., Dkt, 257-2, ¶¶ 1–2, 4.) Further, Persinger states that these standards and tolerances are "not known outside of Luxottica," "not intended to be shared outside of Luxottica," and that the Quality Manufacturing Standards are "unique" to Luxottica and include "instructions specific to Luxottica's proprietary lens designs and specifications." (*Id.* ¶¶ 6–7.) Finally, Persinger states that public disclosure of these standards and tolerances would result in "competitive harm" because Luxottica's competitors could use this manufacturing standards and tolerances information "to alter and improve their own manufacturing processes and derive a competitive advantage against Luxottica." (*Id.* ¶¶ 8–9.) Having reviewed Luxottica's technical Quality Manufacturing Standards, which include a litany of specific manufacturing tolerances for various types of lenses, as well as a dozen "notes" associated with those standards (*see* Ex. A to Persinger Decl., Dkt. 257-2, at ECF[2] 6–9), the Court finds that information about Luxottica's manufacturing standards and tolerances is proprietary technical information that if disclosed could

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

5

expose LensCrafters to competitive harm. Based on Persinger's declaration, that harm would be more than mere "injury to competitive position, as might flow from embarrassing publicity attendant upon public revelations." *Alcon Vision, LLC*, 2020 WL 3791865, at *9 (alteration, quotation marks, and citation omitted). Rather, as is apparent to the Court, and highlighted by Persinger, the disclosure of this information would provide a blueprint of sorts from which Luxottica's competitors might "alter and improve their own manufacturing processes" to gain a competitive advantage over Luxottica. (Persinger Decl., Dkt, 257-2, ¶¶ 8–9.) Thus, the Court finds that despite the strong presumption of disclosure that attaches to this information, sealing the Quality Manufacturing Standards and redacting references to Luxottica's internal manufacturing tolerances is justified.

### B.     Results of Internal Machine Capability Studies

LensCrafters also seeks to redact (1) the results of capability studies conducted by its expert Allyn Hummel that purport to demonstrate that Luxottica's machines are capable of and do manufacture to 0.1mm, and (2) the corresponding results of the responsive analysis performed by Plaintiffs' expert Dan Riall. (Dkt. 257, at 3.) Persinger explains that Luxottica does not publish the results of its machine capability studies; that such information is not intended to be shared outside of Luxottica; and that Luxottica's competitors could use the results of these studies regarding Luxottica's use of a "specific machine" "to alter and improve their own manufacturing processes and derive a competitive advantage against Luxottica." (Persinger Decl., Dkt, 257-2, ¶¶ 12–13.) Unlike the information regarding Luxottica's proprietary manufacturing standards and tolerances described above, Hummel's and Riall's capability results, *i.e.*, the "percentages and statistics regarding manufacturing to 0.1mm measurements" (*id.* ¶ 11), do not appear to present a blueprint from which Luxottica's competitors might "alter and improve" their manufacturing processes. It eludes the Court how the mere *results* of these analyses offer insight that a competitor

6

might use to gain advantage. This finding is underscored by the fact that Hummel's capability study was not conducted to offer LensCrafters insight to alter or improve its own manufacturing process, but rather, was specifically conducted in response to Riall's expert report *in this litigation*. (Hummel Disclosure, Dkt. 257-1, at ECF 27 ¶¶ 9–15.) Finally, Persinger's conclusory declaration does not offer specific facts or examples to address any skepticism the Court might have that competitors could use these "percentages and statistics" prepared in anticipation of this litigation to derive a competitive advantage over Luxottica. To overcome the strong presumption of public access that attaches to this information, LensCrafters "must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Tropical Sails Corp.*, 2016 WL 1451548, at *3 (quoting *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)); *accord Dawson v. Merck & Co.*, No. 12-CV-1876 (BMC) (PK), 2021 WL 242148, at *7 (E.D.N.Y. Jan. 24, 2021) (collecting cases); *T-Jat Sys. 2006 Ltd. v. Amdocs Software Sys. Ltd.*, No. 13-CV-5356 (JMF), 2015 WL 394075, at *6 (S.D.N.Y. Jan. 29, 2015) (denying request to redact because, *inter alia*, the defendant did "not explain with sufficient detail why disclosure of its business information would harm its competitive position"); *see Schoolcraft v. City of New York*, No. 10-CV-6005 (RWS), 2013 WL 4534913, at *3 (S.D.N.Y. Aug. 27, 2013) (noting that while there is a split among district courts as to the necessary showing, "the majority of the courts within this district have only used the specificity requirement when dealing with protective orders seeking to prevent injury to business" (alterations and citation omitted)). Here, LensCrafters has failed to make a "particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection," *Tropical Sails Corp.*, 2016 WL 1451548, at *3, and therefore, has not

overridden the strong presumption of disclosure that attaches to this information. The request to redact the results of Hummel's study and the corresponding results of Riall's analysis is denied.

### C. Percentage of In-Store Versus Central Labs Manufacturing

For similar reasons, the Court also denies LensCrafters' request for limited redactions to the deposition testimony of Jay McDonald, Director of In-Store Projects at Luxottica, stating the estimated percentage of LensCrafters' prescription eyeglasses manufactured in its in-store laboratories versus Luxottica's regional, central labs. (Dkt. 257, at 3.) Without reference to any specific facts or examples, Persinger states that this information is not published or intended to be shared outside of Luxottica, and that if competitors learned this information, they could use it "to alter and improve their own manufacturing processes and derive a competitive advantage against Luxottica." (Persinger Decl., Dkt, 257-2, ¶¶ 15–16.) However, a party arguing against disclosure of "confidential business information," as LensCrafters does, must show "something beyond the mere fact that the particular datum has not previously been made available to the public" and must make "some showing that the disclosure of the information in question would cause some harm." *Salomon Smith Barney, Inc. v. HBO & Co.*, No. 98-CV-8721(LAK), 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001); *see Dawson*, 2021 WL 242148, at *7 ("[A] draft document is not entitled to sealing simply because it was not previously made public or only meant for internal consideration."). Persinger's conclusory statements do not suffice. The Court is not convinced that any theoretical harm from the disclosure of this information regarding the approximate percentage split in manufacturing location overrides the strong presumption in favor of disclosure. *See Tropical Sails Corp.*, 2016 WL 1451548, at *3; *T-Jat Sys. 2006 Ltd.*, 2015 WL 394075, at *6. The request to make limited redactions to McDonald's testimony is denied.

## II. LensCrafters' Strategic Business Communications

Next, LensCrafters seeks to redact in full several emails that it argues contain "confidential business information related to product development and testing, employee training, customer experience and sales strategies, advertising and marketing strategies, and marketing claim support." (Dkt. 257, at 3–4.) In support of its requests to redact, LensCrafters provides the declaration of Jason Jones, Director of EyeCare Systems at Luxottica of America, Inc. d/b/a LensCrafters, who states generally that Luxottica does not make such information public because "it could be capitalized upon by Luxottica's competitors, causing harm to Luxottica." (Jones Decl., Dkt, 257-3, ¶¶ 1, 7–8.)

The first email, Exhibit 3 to Plaintiffs' class certification motion, is a 2010 email between two Luxottica employees. (Ex. A to Jones Decl., Dkt. 257-3, at ECF 6–7.) Jones explains that the email contains information that is "confidential and proprietary because it relates to LensCrafters' product development and testing, including discussion of LensCrafters' measurement error studies for its AccuFit system as part of its marketing claim support process." (Jones Decl., Dkt, 257-3, ¶ 3.) The disclosure of this type of information, including "sales training materials, internal marketing strategies, company marketing plans, and internal emails regarding marketing tests" may expose a party to competitive injury that is sufficient to overcome the presumption of disclosure. *Tropical Sails Corp.*, 2016 WL 1451548, at *4; *see also GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011). Moreover, "[c]onfidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit." *Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998). However, "[s]tale business records cannot support the necessary finding of harm, and therefore 'cannot overcome the public's strong interest in disclosure.'" *Dawson*, 2021 WL 242148, at *8

(emphasis added) (quoting *Alcon Vision, LLC*, 2020 WL 3791865, at *8) (collecting cases). "While a document's age is a strong indicator of staleness, a party seeking to keep a document under seal may nevertheless show that the information is not stale with a *particularized* showing of harm from disclosure" that is ongoing. *Id.* (emphasis added); *compare Encyclopedia Brown Prods., Ltd.,* 26 F. Supp. 2d at 614 (finding that information dating back to 1991, *i.e.*, seven years earlier, should be sealed because the defendants "provided *specific testimony* that, for example, the cost and profit structures of the defendants, the volume of subscribership and the strategies employed by [the defendants] *have not significantly changed* since 1991" (emphasis added)), *with Alcon Vision, LLC*, 2020 WL 3791865, at *8 (finding that the plaintiff "has not explained how the disclosure of information that relates to business strategies that were formulated many years ago would result in any competitive harm"); *In re Parmalat Sec. Litig.*, 258 F.R.D. at 256 (finding that the party had "not come forward with specific facts showing that disclosure of the specific fees that it charged [] for this series of transactions would tend to be damaging *now*, seven to fourteen years after the fact" and denying the request to keep such information confidential (emphasis added)). That the policies, practices, or strategies discussed in years-old documents have been fully implemented, such that they are known to competitors and the public, counsels against finding those documents to still be sensitive. *See Alcon Vision, LLC*, 2020 WL 3791865, at *8.

While Exhibit 3 to Plaintiffs' class certification motion appears to include information about the development and testing of the AccuFit system and related marketing, which arguably constitutes confidential business information, the Court is skeptical that this information remains sensitive more than a decade since the email was sent and AccuFit, with its attendant marketing claims, were made public. Jones does not provide specific facts or a particularized explanation of how this stale information could be capitalized on by Luxottica's competitors to harm Luxottica

10

now or in the future, and for that reason, LensCrafters cannot overcome the public's strong interest in disclosure.  *Dawson*, 2021 WL 242148, at *8; *Alcon Vision, LLC*, 2020 WL 3791865, at *8.  This interest is particularly strong here as the email contains information about the basis for LensCrafters' marketing claims about AccuFit, which undeniably go to the heart of this class action lawsuit.  For these reasons, LensCrafters' request to redact in full Exhibit 3 to Plaintiffs' class certification motion is denied.

The second email that LensCrafters seeks to redact, Exhibit 4 to Plaintiffs' class certification motion, is a 2010 email sent by a Luxottica employee to himself regarding "Accu-Fit Conference Call w/ 7 stores."  (Ex. B. to Jones Decl., Dkt. 257-3, at ECF 9.)  According to Jones, the information in this email is "confidential and proprietary" because it contains "notes reflecting internal discussions on LensCrafters' product development and AccuFit pilot testing, LensCrafters' employee training, discussions of customer experience and sales strategies, and specific feedback from store associates."  (Jones Decl., Dkt, 257-3, ¶ 4.)  For the same reasons the Court found that LensCrafters failed to demonstrate that Exhibit 3 should be redacted in full, the Court also concludes that LensCrafters has not met its burden with respect to Exhibit 4.  Jones does not provide specific facts or a particularized explanation of how this information could be capitalized on by Luxottica's competitors more than a decade after AccuFit's launch to harm Luxottica.  For that reason, LensCrafters cannot overcome the public's strong interest in disclosure.  *Dawson*, 2021 WL 242148, at *8; *Alcon Vision, LLC*, 2020 WL 3791865, at *8.  The public's interest in this email is especially strong as it contains statements that also go to the heart of this case, namely whether LensCrafters' representations amount measurements to 0.1mm were deceptive.

The third email that LensCrafters seeks to redact, Exhibit 34 to Plaintiffs' class certification motion, is a 2014 email communication between Luxottica employees that Jones explains is "confidential and proprietary because it discusses LensCrafters' marketing claim support processes, as well as confidential business information regarding LensCrafters' advertising practices." (Jones Decl., Dkt, 257-3, ¶ 5.) Further, Jones states that the attachment to the email places the communication "in proper context, and reflects an internal presentation with detailed information on LensCrafters' internal measurement error study related to LensCrafters' AccuFit system." (*Id.*) To start, the email does not discuss, but merely references the existence of a marketing claim support process, which the Court does not find, in and of itself, to be confidential or proprietary information. (*See* Ex. C to Jones Decl., Dkt. 257-3, at ECF 11.) Next, the Court rejects LensCrafters' contorted argument that this email should be redacted because Plaintiffs' misleadingly quote a portion of it without providing the attachment that both, reveals the full context, and contains a substantial amount of confidential claim support information. (Dkt. 257, at 4; Jones Decl., Dkt, 257-3, ¶ 5.) The purportedly confidential attachment is not the subject of LensCrafters' pending motion, and reference to it, does not sway the Court's view that the cover email does not contain sensitive information that should be protected from public disclosure.[3] Jones's declaration offers no specific facts or explanation to the contrary. LensCrafters' request to redact in full Exhibit 34 to Plaintiffs' class certification motion is denied.

---

[3] The Court notes that LensCrafters "reserves the right to seal the confidential attachment in the future as needed." (Dkt. 257, at 4 n.2.) This opinion does not address nor decide whether that attachment should be sealed.

The final email that LensCrafters seeks to redact, Exhibits 35 and 47 to Plaintiffs' class certification motion,[4] is from 2012 and includes communication between LensCrafters executives. (Ex. D to Jones Decl., Dkt. 257-3, at ECF 13–14.) According to Jones, this email contains "confidential business strategy on marketing claim support, and discusses sensitive information related to litigation between Luxottica's Australian retailer OPSM and one of its competitors, as well as product development and marketing claim support strategy related to LensCrafters' AccuFit system." (Jones Decl., Dkt, 257-3, ¶ 6.) As with Exhibit 34, Jones adds that the attachments to the email place the communication "in proper context, and reflect voluminous internal documentation of LensCrafters' claim support process with detailed information on LensCrafters' internal measurement error study related to LensCrafters' AccuFit system." (*Id.*) First, for the reasons explained above, the Court rejects LensCrafters' contorted argument that purportedly confidential attachments, which are not included with the exhibit nor the subject of its motion, somehow confer confidentiality on the cover email. Next, to the extent that LensCrafters references litigation between OPSM and a competitor, it does not invoke any sort of work product or attorney-client protection (nor does it appear that any such protection applies here). Finally, while this email contains confidential information about Luxottica's' "strategy on marketing claim support," as well as its "product development and marketing claim support strategy related to LensCrafters' AccuFit system" (Jones Decl., Dkt, 257-3, ¶ 6), the information is more than nine years old and relates to a product and marketing campaign that have already been implemented. *Alcon Vision, LLC*, 2020 WL 3791865, at *8. Jones fails to "show that th[is] information is not stale with a *particularized* showing of harm from disclosure." *Dawson*, 2021 WL 242148, at *8

---

[4] Exhibits 35 and 47 to Plaintiffs' class certification motion are the same document. (Dkt. 257, at 4.)

(emphasis added). Rather, he offers general, conclusory statements that do not explain how this information could be capitalized on by Luxottica's competitors nearly a decade after the launch of AccuFit and its attendant marketing campaign. Thus, the Court concludes that LensCrafters cannot overcome the public's strong interest in disclosure of this email, which is pronounced because the email includes information that is highly relevant to the deceptive marketing claims in this class action lawsuit. (*See* Ex. D to Jones Decl., Dkt. 257-3, at ECF 13.) LensCrafters' request to redact in full Exhibits 35 and 47 to Plaintiffs' class certification motion is denied.

## CONCLUSION

For the reasons stated, the Court grants in part and denies in part LensCrafters' motion to seal. The Court GRANTS LensCrafters' request to keep its Quality Manufacturing Standards under seal and to redact specific references to its internal manufacturing tolerances. The Court DENIES LensCrafters' request with respect to the results of capability analyses conducted by Hummel and Riall; deposition testimony regarding the percentage of in-store versus central labs manufacturing; and Exhibits 3, 4, 34, 35, and 47. The parties are directed to comply with the Court's October 27, 2020 Order requiring the parties to file redacted versions of the completed class certification and *Daubert* briefing. All redacted versions of the briefing with supporting material and exhibits must be filed on the public docket by November 19, 2021.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 14, 2021
   Brooklyn, New York

14