**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
YESENIA ARIZA, *et al.*,

                Plaintiffs,                      MEMORANDUM
                                                        AND ORDER

            -against-                                    17-CV-5216 (PKC) (RLM)

LUXOTTICA RETAIL NORTH AMERICA,
*d/b/a* LensCrafters,

                Defendant.
-----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      At a hearing held on November 25, 2019, this Court declined to strike three unauthorized expert reports served by plaintiffs in response to the rebuttal reports of defendant LensCrafters' experts; instead, the Court allowed LensCrafters to serve sur-reply reports and ordered plaintiffs to reimburse LensCrafters for the incremental additional costs entailed in expanding the rounds of expert reports from two to four.  See Minute Entry (Nov. 25, 2019), Electronic Case Filing ("ECF") Docket Entry ("DE") #163.  Thereafter, in a sealed letter docketed on April 10, 2020, plaintiffs moved for an order compelling LensCrafters to provide itemized bills from its experts, to allow plaintiffs "to fairly evaluate the incremental costs they owe."  [Sealed] Letter Motion to Compel Itemized Expert Bills (Apr. 10, 2020) ("Pl. Mot.") at 3, DE #216.  LensCrafters opposes the motion, asserting that plaintiffs "cite no support for their demand for itemized expert invoices[,]" that the defense experts "did not maintain itemized incremental cost breakdowns[,]" and that such records "do not exist[.]"  [Sealed] Response in Opposition (Apr. 15, 2020) ("Def. Opp.") at 1, 2, DE #218.

      While the parties jockey over plaintiffs' demand for itemized expert bills—and inundate

the Court with more than 700 pages of documents[1]—neither side asks the Court to resolve the central issue implicated by this dispute: to wit, whether LensCrafters is entitled to the $97,758.34 in expert fees that it demands, see Def. Opp. at 1, 3, or whether it should instead be awarded the $8,000 that plaintiffs offer, see Pl. Mot. at 1—or some other number between those two extremes. The Court therefore does not now quantify LensCrafters' expert fee award, but bemoans the needless posturing that produced two grossly unreasonable proposals.

The narrow issue before this Court is whether plaintiffs are entitled to itemized expert invoices, in order to evaluate what LensCrafters has produced for each of its two experts, Drs. Hauser and Ugone: a two-page summary that describes in general terms the nature of the services rendered, the total number of hours expended, and the amount due and owing. See Exs. A and B to Declaration of Geoffrey Graber (Apr. 10, 2020), DE #216-1 at 4-5, 7-8.[2] LensCrafters seeks to deflect the specific question posed by plaintiffs by claiming that its experts "did not maintain itemized *incremental* cost breakdowns[,]" nor "invoices itemized by *incremental* task[.]" Def. Opp. at 1 (emphasis added). LensCrafters' response misses the mark, as that is only a subset of what plaintiffs are seeking. One can reasonably infer from the information reflected on the invoices, and from the declarations proffered by LensCrafters in opposing the pending motion, that Drs. Hauser and Ugone and their respective teams did in fact

---

[1] In addition to the parties' letter-briefs, plaintiffs' attachments comprise 390 pages, see DE #216-1, and LensCrafters' exhibits span 302 pages, see DE #218-1 through #218-7.

[2] Dr. Hauser's invoice reflects that he and his team expended 333.68 hours preparing his sur-reply report in December 2019, billed at $150,375.85, with 40 percent (or $60,150.34) claimed to be due from plaintiffs. For the period from November 16, 2019 through December 31, 2019, Dr. Ugone and his team billed 195.20 hours in connection with his sur-reply report, totaling $94,019.00, with 40 percent (or $37,608.00) purportedly due from plaintiffs.

keep detailed records of the time they expended, to the tenth of the hour.[3]  In other words, while the experts apparently did create detailed time records, they failed to itemize their invoices by incremental task, despite the limited scope of the fee-shifting ordered by the Court. LensCrafters thus appears to be arguing that it is that subset of itemized invoices that "do[es] not exist."  Def. Opp. at 2.

To be sure, as LensCrafters correctly observes, various decisions within this Circuit have awarded expert fees in the absence of itemized invoices.  See id. at 3 & n.5 (collecting cases).  But none of the cited cases involved fees of the magnitude demanded here, for a single set of sur-reply reports.[4]  The question thus becomes whether, in the particular circumstances of this case, the Court can and should require LensCrafters to produce the demanded documents.

"It is well established that the party seeking reimbursement for expert fees bears the burden of proving reasonableness."  Brown v. Green 317 Madison, LLC, No. 11 CV 4466(ENV), 2014 WL 1237448, at *15 (E.D.N.Y. Feb. 4, 2014) (citation omitted), adopted, 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014); see Korabik v. Arcelormittal Plate LLC, 310 F.R.D. 205, 206 (E.D.N.Y. 2015).  "Courts consider various factors in determining the

---

[3] As reflected in one of the declarations submitted by LensCrafters, Dr. Hauser, who claims a rate of $950 per hour, billed for 19.5 hours during the relevant one-month period; his team of six other named individuals, along with an unspecified number of analysts and senior analysts, cumulatively worked an astonishing 314.43 hours, with hourly rates ranging from a low of $320 to a high of $770.  See Declaration of Rebecca Kirk Fair (docketed on Apr. 15, 2020) ¶¶ 4-5, 8, DE #218-3.  Dr. Ugone claims to have worked 16.5 hours at an hourly rate of $650, and his team of six individuals worked a total of 178.7 hours at hourly rates ranging from $350 to $565.  See Declaration of Keith R. Ugone, Ph.D. (docketed on Apr. 15, 2020) ¶¶ 5, 9, DE #218-4.

[4] For example, the court awarded an expert fee of $3,400 in Disabled Patriots of America, Inc. v. Niagara Group Hotels, LLC, 688 F.Supp.2d 216, 227-28 (W.D.N.Y. 2010).  The one case in the group that involved an expert fee exceeding four figures, Stevens v. Rite Aid Corp., 6:13-CV-783, 2016 WL 6652774, at *7 (N.D.N.Y. July 6, 2016), awarded the prevailing plaintiff $48,367.95 in expert fees after trial—not for one or two supplemental expert reports.

3

'reasonableness' of an expert's fee," and have "reduced the number of compensable preparation hours where they have deemed them unreasonably high." Brown, 2014 WL 1237448, at *15 (collecting cases). Moreover, in exercising their discretion to award reasonable expert fees, courts may slash the amount requested where the movant "fails to submit adequate supporting documentation." The Independence Project, Inc. v. Ventresca Bros. Constr. Co., Inc., 397 F.Supp.3d 482, 500 (S.D.N.Y. 2019) (quoting Swartz v. HCIN Water St. Assocs., LLC, 17 Civ. 4187 (ER), 2018 WL 5629903, at *7 (S.D.N.Y. Oct. 31, 2018)); see Craig v. UMG Recordings, Inc., 16-CV-5439 (JPO), 2019 WL 2992043, at *6 (S.D.N.Y. July 9, 2019) (reducing fees by 50% where, *inter alia*, the expert's contemporaneous timesheet "contain[ed] little explanation of how [the expert's] time was spent, relying exclusively on vague entries"). Courts are more likely to look to experts' contemporaneous time records, and to perform the kind of lodestar analysis routinely conducted in assessing applications for attorneys' fees, where, as here, the movants are seeking substantial awards for expert fees. See Matteo v. Kohl's Dep't Stores, Inc., No. 09 Civ. 7830(RJS), 2012 WL 5177491, at *5 (S.D.N.Y. Oct. 19, 2012) ("Courts in this district assess the reasonableness of expert fees using the same method they do for attorneys' fees-by first multiplying the reasonable hourly rate by the reasonable number of hours expended." (citations omitted)), aff'd, 533 F.App'x 1 (2d Cir. 2013); see also Vista Outdoor Inc. v. Reeves Family Tr., 16 Civ. 5766, 2018 WL 3104631, at *11-12 (S.D.N.Y. May 24, 2018) (after initially submitting a four-page summary document containing "a bulleted list of the categories of work performed in general, a summary of the experts employed and their hours and rates," plaintiff disclosed the experts' "contemporaneous time records" but failed to "explain why [its] experts charged such seemingly excessive rates"; expert fee award reduced by 50%). "When the reasonableness of an expert's fees is not fully

4

explained, the Court may exercise its discretion to determine a reasonable fee." Penberg v. HealthBridge Mgmt., No. 08 CV 1534(CLP), 2011 WL 1100103, at *15 (E.D.N.Y. Mar. 22, 2011) (collecting cases); accord Resnik v. Coulson, 17-CV-676 (PKG) (SMG), 2020 WL 5802362, at *11-12 (E.D.N.Y. Sept. 28, 2020) (reducing expert fee by one-third); see, e.g., Matteo, 2012 WL 5177491, at *7 (finding plaintiffs' request for expert fees totaling $23,765.50 to be "excessive" and granting an award "limited to $2,500.00, reflecting this Court's reduction of Plaintiffs['] expert's rate and hours").

Indeed, courts within this Circuit have denied requested expert fees in their entirety where the documentation proffered in support of the award was "plainly deficient," in that it failed to itemize the expert's hourly rate, number of hours spent, and a description of the work performed. See Rhodes v. Davis, No. 08 Civ. 9681(GBD), 2015 WL 1413413, at *4 (S.D.N.Y. Mar. 23, 2015), aff'd, 628 F.App'x 787 (2d Cir. 2015); Wi-Lan, Inc. v. LG Elecs., Inc., No. 10 Civ. 432(LAK)(AJP), 2011 WL 3279075, at *1 n. 1 (S.D.N.Y. Aug. 2, 2011) (after having indicated its willingness to shift costs for certain discovery violations, court denies plaintiff's motion for sanctions based on plaintiff's failure to submit evidence such as expert time records "demonstrating how much money was spent and on what"), adopted as modified on other grounds, 2012 WL 760148 (S.D.N.Y. Mar. 7, 2012), aff'd, 493 F.App'x 103 (Fed. Cir. 2012).

In short, under the circumstances of this case, including the extravagant number of hours claimed, hourly rates and award demanded, plaintiffs were amply justified in requesting that LensCrafters produce the experts' itemized time records. Rather than produce such records for the relevant period, LensCrafters had its experts engage in the following "time-consuming exercise[,]" Def. Opp. at 2: they performed a so-called "word count analysis[,]" comparing the

5

language in their sur-reply reports with that in their earlier reports, see id., thereby yielding what LensCrafters characterizes as a "conservative 40% allocation" to plaintiffs of the billed charges, id. at 2 n.3. LensCrafters' unprecedented and unorthodox approach to extrapolating its incremental expert fees is too thin a reed on which to sustain LensCrafters' burden of establishing the reasonableness of the nearly $100,000 that LensCrafters demands. While itemized timesheets are not a prerequisite to recovery of expert fees in all cases, the disputed award in this case is anything but typical. Therefore, to the extent that LensCrafters intends to press its demand and to file a motion seeking such a sizable award, LensCrafters must first produce its experts' timesheets to plaintiffs. Rather than set a deadline for that production, the Court will afford the parties an opportunity to negotiate a *reasonable* expert fee award and thus to avoid any further litigation of this dispute and fly-specking of experts' time charges. A joint updated status report regarding the status of the parties' efforts is due by May 19, 2022.

    **SO ORDERED.**

**Dated:**    Brooklyn, New York
              March 31, 2022

                               /s/ *Roanne L. Mann*
                               **ROANNE L. MANN**
                               **UNITED STATES MAGISTRATE JUDGE**