Andrew N. Friedman (admitted *pro hac vice*)
Geoffrey A. Graber (admitted *pro hac vice*)
Brian E. Johnson (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
ggraber@cohenmilstein.com
afriedman@cohenmilstein.com
bejohnson@cohenmilstein.com

*Additional Plaintiffs' Counsel Listed on Signature Page*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | |
|---|---|
| THOMAS ALLEGRA, YESENIA ARIZA, MARIANA ELISE EMMERT, STUART ROGOFF, GRACELYNN TENAGLIA, and MELISSA VERRASTRO, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUXOTTICA RETAIL NORTH AMERICA d/b/a LensCrafters,<br><br>Defendant. | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FOR APPOINTMENT OF CLASS COUNSEL, AND TO ISSUE APPROPRIATE NOTICE TO THE CLASS**<br><br>CASE NO. 1:17-cv-05216-PKC-LB |

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    PROCEDURAL HISTORY ..................................................................................2

III.   THERE IS MORE THAN "PROBABLE CAUSE" TO BELIEVE THAT FINAL
APPROVAL OF THE SETTLEMENT WILL ULTIMATELY BE GRANTED..........................5

  A. The Settlement is Presumptively Fair because it Resulted from Arm's Length Negotiations
by Experienced and Informed Counsel.....................................................................................6

  B. The Grinnell Factors Weigh in Favor of Granting Preliminary Approval.............................7
     1.   The Complexity, Expense, and Likely Duration of the Litigation. .................................8
     2.   The Settling Parties are Well-Informed about the Strengths and Weaknesses of their
Claims at this Advanced Stage. ...................................................................................................9
     3.   The Settlement Amount is Fair, Reasonable, and Adequate in Light of the Risks of
Further Litigation. ......................................................................................................................11
     4.   The Defendant's Ability to Withstand a Greater Judgment Does Not Prevent Approval
of the Settlement. .......................................................................................................................12
     5.   The Settlement is Reasonable Considering the Possible Recovery and the Attendant
Risks of Litigation......................................................................................................................13

IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED......................14

  A.  The Settlement Class Meets the Requirements of Rule 23(a).........................................16
     1.   The Number of Class Members is So Numerous that Joinder is Impracticable.............16
     2.   There Are Questions of Law and Fact Common to All Class Members. ......................17
     3.   Plaintiffs' Claims are Typical of Those of the Settlement Class.................................18
     4.   The Settlement Class Is Adequately and Fairly Represented.......................................19

  B.  The Settlement Class Meets the Requirements of Rule 23(b)(3) .....................................20
     1.   Common Questions of Law and Fact Predominate. .....................................................21
     2.   Class Action is the Superior Method to Adjudicate this Case......................................22

  C.  Class Counsel Should be Appointed As Settlement Class Counsel ...................................23

V.    THE NOTICE PLAN AND PLAN OF ALLOCATION ARE REASONABLE...............24

  A.  The Notice Plan....................................................................................................................24

  B.  Distribution of the Net Settlement Fund..............................................................................27

VI.   PROPOSED SCHEDULE FOR SERVICE OF NOTICE, MOTIONS FOR FEES AND
SERVICE AWARDS, CLASS EXCLUSIONS, OBJECTIONS, AND FAIRNESS HEARING 27

VII.  CONCLUSION ................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987) ............................................................................27

*In re Air Cargo Shipping Sers. Antitrust Litig.*,
  No. 06-MD-1775 (JG) (VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ............... 17, 19

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-MD-1775-JG-VVP, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ................... 10, 27

*In re Am. Int'l Grp., Inc. Sec. Litig*,
  689 F.3d 229 (2d Cir. 2012) ........................................................ 15, 21, 22, 23

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................*passim*

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. 02-CV-5575-SWK, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......................... 9, 10, 14

*Authors Guild v. Google, Inc.*,
  No. 05-CV-8136 (DC), 2009 WL 4434586 (S.D.N.Y. Dec. 1, 2009) ......................................7

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07-CV-2207-JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ..................................11

*Berkson v. Gogo LLC*,
  147 F. Supp. 3d 123 (E.D.N.Y. 2015)........................................................5, 6

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) ..........................................................................24

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
  No. 85-CV-3048-JMW, 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987)........................................12

*Charron v. Pinnacle Grp. N.Y. LLC*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012) ..............................................................13

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ..............................................................10

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y. 2009) .............................................................. 15, 21

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ........................................................16

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ................................................6

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ......................................................12

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*
    *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .........................*passim*

*Dial Corp. v. News Corp.*,
    317 F.R.D. 426 (S.D.N.Y. 2016) ................................................8

*Dover v. British Airways, PLC (UK)*,
    323 F. Supp. 3d 338 (E.D.N.Y. 2018)....................................5, 6, 7

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010)........................................16

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015)........................................10

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................27

*Hall v. ProSource Techs., LLC*,
    No. 14-CV-2502-SIL, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ..................26

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ..........................................13, 25

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ..............................................17, 21

*Kurtz v. Kimberly-Clark Corp.*,
    14-cv-1142, ECF No. 471 (E.D.N.Y. June 12, 2023) ........................16, 20

*Larsen v. JBC Legal Grp., P.C.*,
    235 F.R.D. 191 (E.D.N.Y. 2006) ..............................................20

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015).............................................6

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) .....................................12, 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................13

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................6

*Parker v. City of N.Y.*,
No. 15-CV-6733 (CLP), 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) ........................5, 6, 7

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
164 F.R.D. 362 (S.D.N.Y.1996) .......................................................................27

*Reid v. SuperShuttle Int'l, Inc.*,
No. 08-CV-4854 (JG) (VVP), 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012)......................18

*Sanders v. CJS Sols. Grp., LLC*,
No. 17-CIV-3809 (ER), 2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) ...............................7

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................................25

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06-CV-13761-CM, 2008 WL 2944620 (S.D.N.Y. July 31, 2008)................................11

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .........................................................................................21

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-1738, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)...............................8, 13, 27

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012) ..................................................................*passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .........................................................................13, 26

**Statutes**

Fed. R. Civ. P. 23 .....................................................................................*passim*

# I.   INTRODUCTION

After nearly six years of hard-fought litigation, Interim Class Counsel ("Class Counsel"), on behalf of Plaintiffs Yesenia Ariza, Thomas Allegra, Mariana Emmert, Stuart Rogoff, Gracelynn Tenaglia, and Melissa Verrastro (together "Plaintiffs"), on the one hand, and Defendant Luxottica of America Inc. d/b/a LensCrafters f/k/a Luxottica Retail North America Inc. d/b/a/ LensCrafters ("LensCrafters"), on the other (together with Plaintiffs, "the Parties"), have entered into a proposed Settlement Agreement (the "Settlement" or "Agreement"), dated June 27, 2023.[1]

The Settlement, if finally approved, would resolve all claims brought by Plaintiffs and a proposed class (the "Settlement Class" or "Class") The Settlement Class is all U.S. residents who, from September 5, 2013 to the date of the Preliminary Approval Order, purchased prescription eyeglasses in the United States from LensCrafters after being fitted with AccuFit.[2]

Under the Settlement, LensCrafters agrees to pay $39 million into a *non-reversionary*, *common fund* (the "Settlement Amount") in exchange for dismissal of the litigation with prejudice and release of certain claims by Plaintiffs and the Class.[3] LensCrafters denies and continues to deny all of Plaintiffs' claims and allegations of wrongdoing and has agreed to the Settlement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation.

For the reasons stated below, the proposed Class should be certified for settlement purposes and the proposed Settlement should be preliminarily approved by the Court. Plaintiffs seek the Court's entry of an order providing for preliminary approval, which will set in motion a process for the Court to assess final approval of the Settlement, after provision of (i) notice to the

---

[1] The Agreement is attached as Exhibit A to the Declaration of Geoffrey Graber in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of a Class for Settlement Purposes, for Appointment of Class Counsel, and to Issue Appropriate Notice to the Class ("Graber Decl.").

[2] Excluded from the Settlement Class are: LensCrafters; LensCrafters' employees, officers, and directors, as well as members of their immediate families; LensCrafters' legal representatives, heirs, and successors; and any judge, justice or judicial officer who have presided over this matter and the members of their immediate families and judicial staff.

[3] The release is summarized in the Agreement and in the proposed long-form Notice described below. *See* Graber Decl., Ex. A (Settlement Agreement) at Sec. ¶¶ 9-10; Ex. E to Settlement Agreement.

Settlement Class, (ii) an opportunity for each Settlement Class member to exclude itself from, object to, or otherwise be heard regarding the Settlement, and (iii) a subsequent hearing on final approval (the "Fairness Hearing"). Plaintiffs also seek the Court's approval of the manner and form of the proposed Long Form and Short Form Notices (collectively, the "Notices") and appointment of Kroll Settlement Administration, LLC as Settlement Administrator who will also establish the Escrow Fund. Finally, Plaintiffs seek the establishment of a briefing schedule for (1) final settlement approval and a proposed plan of distribution, and (2) Class Counsel's application for attorneys' fees, expenses, and Class Representative service awards. LensCrafters does not oppose the motion or the proposed preliminary approval order, but does not consent to any of the factual or legal representations made in the motion or in the supporting papers.[4]

## I.      PROCEDURAL HISTORY

The Parties have reached an agreement to resolve this long-running and contentious litigation that provides 39 million dollars in immediate monetary relief to all LensCrafters' customers, living in the United States, who Plaintiffs allege were injured as a result of LensCrafters' allegedly deceptive marketing campaign of its AccuFit Digital Measuring System.

Plaintiffs Yesenia Ariza and David Soukup,[5] New York residents, filed the first class action complaint against LensCrafters for alleged misrepresentations regarding AccuFit on September 5, 2017 in this Court. *See* ECF No. 1. The same day, similar class actions were filed in the Northern District of California and the Southern District of Florida. These actions were transferred and related to the New York action, and on December 8, 2017, all three actions were consolidated. On December 12, 2017 and January 5, 2018, Plaintiffs filed the Consolidated Complaint and First Amended Consolidated Complaint, respectively, against LensCrafters. Plaintiffs filed the operative Second Amended Consolidated Complaint ("SACC") on September 21, 2018, seeking damages and injunctive relief, and asserting claims on behalf of themselves and a California Class,

---

[4] LensCrafters denies and continues to deny that certification of any proposed class for non-settlement litigation purposes is or ever was appropriate pursuant to Rule 23.

[5] Soukup, along with another named plaintiff Amy Harloff, was voluntarily dismissed on October 17, 2018.

Florida Class, and New York Class. ECF No. 50. Plaintiffs alleged, inter alia, claims under New York, California and Florida consumer protection laws, as well claims under New York, California and Florida common law. LensCrafters filed an answer. ECF No. 66.

The discovery process was extensive. Both parties filed numerous motions to compel and LensCrafters produced close to seventy thousand pages of documents. Graber Decl. ¶ 4 Plaintiffs conducted fifteen fact depositions (including three 30(b)(6) representatives of LensCrafters), and LensCrafters deposed all six named Plaintiffs in this case, Plaintiffs' two "confidential witnesses", and two named plaintiffs' family members. Fact discovery spanned nearly two years.

The parties also conducted extensive expert discovery. Plaintiffs submitted voluminous, multi-thousand page expert reports from their seven expert witnesses, as did LensCrafters with its eight experts. Decl. ¶ 4. Each expert was deposed, leading to a total of fifteen expert depositions. *Id.*.

On October 29, 2020, the parties filed briefing involving Plaintiffs' Motion for Class Certification and the parties' *Daubert* challenges. ECF Nos. 237-250. LensCrafters also filed a sur-reply in further opposition to Plaintiffs' Motion for Class Certification. ECF No. 253. On December 13, 2021, the Court issued a 155-page decision granting in part and denying in part Plaintiffs' Motion for Class Certification, and resolving the parties' initial *Daubert* challenges for class certification purposes. The Court granted Plaintiffs' request for class certification under Rule 23(b)(3) with respect to claims under the NY General Business Law §§ 349, 350 ("NY GBL Claims"); the Florida Deceptive and Unfair Practices Act ("FDUTPA claim"); California's Unfair Competition Law ("UCL Claim"), False Advertising Law ("FAL Claim"), and Consumer Legal Remedies Act ("CLRA Claim"); and for unjust enrichment under California, Florida, and New York law. ECF 272. On December 27, 2021, LensCrafters filed a petition to the Second Circuit under Fed. R. Civ. P. 23(f) seeking leave to appeal the Court's class certification order; on March 24, 2022, the Second Circuit denied LensCrafters' petition for an appeal.

On April 1, 2022, Plaintiffs withdrew their unjust enrichment claim under New York law. On May 13, 2022, the parties filed their respective papers regarding LensCrafters' Motion for

Partial Summary Judgment. ECF Nos. 288-290. The Court denied the Motion for Partial Summary Judgement with respect to the Florida unjust enrichment claim and granted the motion with respect to the UCL Claim, FAL Claim, CLRA Claim seeking equitable relief, and unjust enrichment claim under California law. As a result, only the NY GBL Claims, FDUTPA Claim, CLRA Claim seeking legal relief, and unjust enrichment claim under Florida law remained for trial.

Following the parties' service of motion papers over the course of several months, on March 3, 2023, LensCrafters filed its Motion for Summary Judgement seeking summary judgment on all the remaining claims along with their renewed *Daubert* motions and oppositions to Plaintiffs' renewed *Daubert* motions, and Plaintiffs filed their Opposition to LensCrafters' Motion for Summary Judgement and their renewed *Daubert* motions and oppositions to LensCrafters' renewed *Daubert* motions. ECF Nos. 319-327.

On April 12, 2022 and September 28, 2022, the Parties attended mediation before Judge Daniel Weinstein (ret.) and Ambassador David Carden, of JAMS. Graber Decl. ¶6. No agreement was reached at mediation, but the Parties continued their settlement discussions in the following months. *Id.* ¶¶7-8.

The case was scheduled for a four-week jury trial set to begin on July 10, 2023. In anticipation of trial, the parties exchanged proposed jury instructions, verdict forms, witness lists and exhibit lists. The parties also filed respective motions in limine. LensCrafters' Motion for Summary Judgment and both Parties' renewed *Daubert* motions remained pending before the Court.

The parties have since prepared the formal settlement agreement now before the Court, which built on the mediation and subsequent discussions. The Parties also retained the services of an experienced settlement administrator, Kroll Settlement Administration, LLC. Plaintiffs developed a notice and funds-distribution plan, which is incorporated into the settlement agreement and detailed below.

## II. THERE IS MORE THAN "PROBABLE CAUSE" TO BELIEVE THAT FINAL APPROVAL OF THE SETTLEMENT WILL ULTIMATELY BE GRANTED

Preliminary approval is the first of a two-step process leading to final approval of a class action settlement. *Parker v. City of N.Y.*, No. 15-CV-6733 (CLP), 2017 WL 6375736, at *4 (E.D.N.Y. Dec. 11, 2017). The second step is a fairness hearing to confirm whether the proposed settlement is fair, reasonable and adequate pursuant to Rule 23(e). *See id.*; *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 130–31 (E.D.N.Y. 2015). In making that determination, Rule 23(e)(2) directs courts to consider whether:

a. the class representatives and class counsel have adequately represented the class;

b. the proposal was negotiated at arm's length;

c. the relief provided for the class is adequate, taking into account:

    i.  the costs, risks, and delay of trial and appeal;

    ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.  the terms of any proposed award of attorney's fees, including timing of payment; and

    iv.  any agreement required to be identified under Rule 23(e)(3); and

d. the proposal treats class members equitably relative to each other.

"[T]o grant preliminary approval, the court need only determine that there is what might be termed 'probable cause' to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness." *Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338, 349 (E.D.N.Y. 2018) (citation and quotations omitted); *Parker*, 2017 WL 6375736 at *4. Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Dover*, 323 F. Supp. 3d at 349 (citation omitted). This step is a "preliminary"

review of the fairness of the settlement. *See Berkson*, 147 F. Supp. 3d at 130. This threshold is easily met here.

**A. The Settlement is Presumptively Fair because it Resulted from Arm's Length Negotiations by Experienced and Informed Counsel**

The Settlement was arm's length and hard-fought by experienced counsel after completion of fact and expert discovery over the course of nearly six years of litigation, and thus is presumed fair. When considering approval of a class action settlement, the Court must "determine if the settlement was achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." *Parker*, 2017 WL 6375736, at *5 (citation and quotation marks omitted). A proposed settlement resulting from arm's length negotiations between experienced, capable counsel is entitled to a presumption of fairness. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) ("Where a settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the negotiation enjoys a presumption of fairness.") (citation omitted). Moreover, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (citing *Chatelain v. Prudential-Bache Secs., Inc*., 805 F. Supp. 209, 212 (S.D.N.Y. 1992)).

Both of these aspects are present here. First, Class Counsel is one of the most highly experienced firms in the country in litigating complex consumer class actions. Cohen Milstein is widely recognized as among the top plaintiffs' class action firms in the country, having led multiple complex cases to successful conclusions. The opinions of experienced and informed counsel supporting settlement are entitled to considerable weight. *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 662 (S.D.N.Y. 2015) (finding settlement procedurally fair

where due to experienced counsel and extensive discovery, "counsel on both sides were well-situated to thoughtfully assess the potential outcomes of the case and the likelihoods of each occurring"). The Parties' engagement of an experienced, independent mediator further ensures that negotiations were non-collusive and conducted at arm's length. *See Sanders v. CJS Sols. Grp., LLC*, No. 17-CIV-3809 (ER), 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement").

Second, the Settlement demonstrates all the hallmarks of an arm's length agreement. Both Parties' counsel had extensive knowledge of the case record, resulting from years of hard-fought litigation. Graber Decl. ¶ 7. The Parties' settlement negotiations themselves were contentious and took place over the course of more than a year. *Id.* ¶¶ 6-8. Even after the Parties preliminarily agreed on the dollar amount of the Settlement, they continued to negotiate the specifics of the Settlement for an additional four weeks. *Id.* ¶ 8.

In short, the Settlement was the product of extensive and hard-fought litigation occurring alongside equally hard-fought negotiations. Accordingly, this factor weighs in favor of Court approval of the proposed Settlement.

### B. The *Grinnell* Factors Weigh in Favor of Granting Preliminary Approval

While it is unnecessary to undertake "a full fairness analysis" at the preliminary approval stage, *Authors Guild v. Google, Inc.*, No. 05-CV-8136 (DC), 2009 WL 4434586 (S.D.N.Y. Dec. 1, 2009), at *1, "the factors that will be relevant to final approval can be instructive in considering a motion for preliminary approval." *Dover*, 323 F. Supp. 3d at 350; *Parker*, 2017 WL 6375736, at *5. These factors, commonly referred to as the "*Grinnell* factors," are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

establishing damages; (6) the risks of maintaining the class action through the trial; the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (citations omitted). "[N]ot every factor must weigh in favor of- settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 431 (S.D.N.Y. 2016). These factors are analyzed in the following sections, with the exception of the second factor—examining the reaction of the class—which cannot be considered on preliminary approval because notice has not yet been disseminated to the Settlement Class. These factors significantly overlap with the factors in Rule 23(e)(2).

For the reasons set forth below, each of the applicable *Grinnell* factors supports preliminary approval. A preliminary review of those factors demonstrates not only that the Settlement falls within the range of reasonableness, but also that the Court is likely to grant final approval. The Court should therefore grant preliminary approval of the Settlement and authorize notice to the proposed Settlement Class.

**1. The Complexity, Expense, and Likely Duration of the Litigation.**

The likelihood that further litigation of this case would be protracted and risky supports preliminary approval of the settlement. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738-BMC-JO, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012).

This case has been fiercely litigated for nearly six years. As described above, discovery spanned nearly two years, including the productions of close to seventy thousand pages, numerous data sets from studies conducted by LensCrafters' and Plaintiffs' experts, 40 depositions, and

thousands of pages of reports from fifteen expert witnesses. Graber Decl. ¶ 4. Fact and expert discovery were extensive given the volume of documents and data that Plaintiffs and their experts reviewed and analyzed. Multiple discovery motions, a motion for class certification, and multiple rounds of *Daubert* and summary judgment motions have been briefed and, in some instances, argued. And while LensCrafters' pending *Daubert* and summary judgment motions are currently moot due to the proposed settlement, they will be reraised if the settlement is not approved.

Given the complexity of the factual and legal issues here, the conflicting expert testimony, the voluminous record, and the stakes at issue, the trial, which had been scheduled to begin on July 10, 2023, would have lasted many weeks. Post-trial motions followed by appeals would have been all but inevitable, delaying resolution by many more years. In short, because this Action is extremely complex, has required substantial time and expenses to litigate thus far, and would require far more time and expenses to litigate through a trial and post-trial appeals, the first *Grinnell* factor weighs heavily in favor of granting preliminary approval.

### 2. The Settling Parties are Well-Informed about the Strengths and Weaknesses of their Claims at this Advanced Stage.

At the time of this settlement, the Parties have completed fact and expert discovery, they have engaged in multiple rounds of mediation exploring the strengths and weakness of each side's case, the Court has granted class certification, and Plaintiffs' GBL Claim, FDUTPA Claim, CLRA claim seeking legal relief, and Florida unjust enrichment claim have survived one round of summary judgment. As such, Plaintiffs' claims are well advanced at the time of this Settlement.

"The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02-CV-5575-SWK, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *see also In re Air Cargo Shipping Servs.*

*Antitrust Litig.*, No. 06-MD-1775-JG-VVP, 2009 WL 3077396, at *8 (E.D.N.Y. Sept. 25, 2009) ("The purpose of the third *Grinnell* factor is to 'assure the Court that the counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'" (quoting *In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 458 (S.D.N.Y. 2004)). The Court must determine whether the Parties "have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10.

In cases where discovery is completed prior to the settlement agreement, this factor weighs even more heavily in favor of approving the settlement. *See, e.g.*, *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015) (factor satisfied where litigants conducted significant discovery prior to entering negotiations, conducting in-depth interviews of dozens of class members, reviewing extensive document production, and participating in mediation and extensive settlement negotiations); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (factor satisfied where parties completed extensive discovery that included millions of pages of documents and depositions of key witnesses on both sides).

Several facts in this record demonstrate that this *Grinnell* factor supports preliminary approval. Before filing the complaints at the outset of this litigation, Class Counsel extensively investigated the representations related to the AccuFit Digital Measuring System made by LensCrafters and its effects, including by completing a comprehensive review of the claims of confidential witnesses, speaking with consulting experts, researching the applicable law with respect to the claims asserted in the Action and the potential defenses, and consulting with industry experts. Graber Decl. ¶ 3. As detailed above, a sizeable discovery record has been compiled, and both fact discovery and expert discovery concluded prior to the Parties' entering into the

Settlement. Also prior to agreement on the Settlement, the Parties fully briefed Plaintiffs' motion for class certification, *Daubert* motions, numerous discovery motions, and two motions for summary judgment. Finally, the settlement negotiations were accompanied by frank discussions of the relative strengths and weaknesses of the Parties' claims and defenses. *Id.* ¶ 7. The information gained through these various endeavors provided Plaintiffs with a comprehensive understanding of the relative strengths and weaknesses of their case enabling Plaintiffs to negotiate a settlement that is an excellent result for the Settlement Class. *Id.* ¶12. Therefore, the third *Grinnell* factor supports preliminary approval of the Settlement.

3. **The Settlement Amount is Fair, Reasonable, and Adequate in Light of the Risks of Further Litigation.**

The Settlement is fair and reasonable in light of the risks. "In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, No. 06-CV-13761-CM, 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (quoting *Grinnell*, 495 F.2d at 463). Final approval of the Settlement ensures a certain recovery of $39 million in cash for the Settlement Class, whereas continuing to litigate the Action would present numerous significant risks.

LensCrafters' Motion for Summary Judgement and *Daubert* motions were pending before the Court at the time of Settlement. Should Plaintiffs have failed to prevail on any of those motions, the case may have effectively ended, or at minimum, would have been substantially diminished. Further, in the event that the Court denied LensCrafters' Motion for Summary Judgment and *Daubert* motions, Plaintiffs would still face the risk of a jury trial. Even at trial, Defendant could seek to decertify the class. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-CV-2207-JGK, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no

assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings.").

The outcome of a trial involving complex facts and untested legal theories is invariably unpredictable. In any complex case, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85-CV-3048-JMW, 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). Under the proposed settlement, each class member who submits a claim is eligible to receive up to $50.00 for each set of prescription eyeglasses purchased from LensCrafters during the Class Period.[6] Graber Decl., Ex. A at 3.2.1. That is nearly double the estimated actual damages calculated by Plaintiffs' expert. Graber Decl. ¶ 5. Accordingly, this factor supports granting preliminary approval.

### 4. The Defendant's Ability to Withstand a Greater Judgment Does Not Prevent Approval of the Settlement.

While courts consider the ability of the defendant to withstand a greater judgment than that secured in the settlement in analyzing the fairness of a settlement, it does not generally indicate that a settlement is unreasonable or inadequate when the remaining *Grinnell* factors weigh in favor of settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). This factor is "typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 314-15 (S.D.N.Y. 2020). This factor is usually "neutral" unless the defendant is suffering financial difficulties. *Id.* Even if

---

[6] This amount is subject to a pro rata reduction should the total claims exceed the Net Settlement Fund.

LensCrafters could withstand a judgment that exceeds the relief provided by the settlement here, courts generally do not find this to be an impediment to settlement. *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6; *see also Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) ("A defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.") (citation and quotation marks omitted). For LensCrafters, a $39 million settlement is not an insignificant sum. Accordingly, this factor does not impede the Court's ability to grant preliminary approval of this settlement, which otherwise readily satisfies the Rule 23(e)(2) final approval standard that it be fair, reasonable, and adequate.

### 5. The Settlement is Reasonable Considering the Possible Recovery and the Attendant Risks of Litigation

The last two *Grinnell* factors "recognize[] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (citation omitted). In applying these factors, "[t]he adequacy of the amount achieved in settlement may not be judged in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (quotation omitted); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998) ("Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval."). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see also In re IMAX Securities Litig.*, 283 F.R.D. at 192 ("[T]he Second Circuit 'has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought.'" (quotation omitted)).

Plaintiffs' expert economist, Richard Eichmann, calculated a classwide price premium of 7.24% or approximately $23.28 for the average pair of LensCrafters eyeglasses. Graber Decl. ¶ 5. As noted above, LensCrafters' filed *Daubert* motions to exclude both Richard Eichmann's economic analysis and the conjoint survey conducted by Sarah Butler. If the Court excluded either expert, it would significantly impact that damages model and methodologies used to calculate the damages, potentially leaving Plaintiffs with no way to prove damages. Additionally, LensCrafters could still prevail at summary judgment. This highlights the risks of proceeding to trial, where— even if presented—this model could be rejected by a jury.

In contrast, the Settlement, if approved, would provide guaranteed cash compensation to Settlement Class members who do not opt out. The fact that the cash will be paid in the near future weighs in favor of approval. *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *13 (where settlement fund is in escrow, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). As explained above, the potential risks, an assessment of the strength of the claims and defenses, the possible complications that may arise from future changed circumstances, the potential for appeals, and the vigorous negotiation at arm's length on behalf of the proposed Class are all additional factors that place the amount of the recovery in richer context. When balancing these factors in analogous class cases, courts have approved settlements that represent small fractions of the anticipated total losses or harm. In light of the risks of continuing to litigate this Action detailed above, the final *Grinnell* factors weigh in favor of approval.

## III. CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

Pursuant to Rules 23(a) and (b)(3), Plaintiffs respectfully request certification of the proposed Class for settlement purposes. A court asked to certify a class for settlement purposes "need not inquire whether the case, if tried, would present intractable management problems."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The court's focus instead is "on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621. The court must engage in a rigorous analysis to ensure the Rule 23 requirements are met, *In re Am. Int'l Grp., Inc. Sec. Litig*, 689 F.3d 229, 237-38 (2d Cir. 2012), but in doing so it "must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 158 (E.D.N.Y. 2009) (citations omitted).

Where, as here, a class has already been certified, the Court ordinarily need only consider whether the proposed settlement "calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." *See* Committee Notes, Subdivision 23(e)(1). The Settlement Class is similar to the three state sub-classes certified previously by this Court, except for the following: *First,* the time period for the Settlement Class is expanded to begin at September 5, 2013 for the entire class, rather than September 5, 2014 for the California and New York class members, and runs to the date of preliminary approval; *Second*, the scope of the class is expanded to cover a nationwide class under New York law, rather than separate sub-classes under separate state laws.[7] Expansion of the geographic scope of the Settlement Class for settlement purposes is appropriate. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 236 (E.D.N.Y. 2010) (approving settlement of nationwide class after the court had certified a New

---

[7] Alternatively, the Court could certify a nationwide class under Ohio law, as the home state of LensCrafters, but as the Court has already found that a class is certifiable under New York law, the parties have agreed to the application of New York law to the Settlement Class. Nationwide settlements under a single state law are appropriate where the interests of the class are not materially dissimilar—as is the case here. *Kurtz v. Kimberly-Clark Corp.*, 14-cv-1142, ECF No. 471 at 10-13 (E.D.N.Y. June 12, 2023).

York-only class for purposes of class certification and a nationwide class in connection with preliminary settlement approval). Additionally, as demonstrated below, the proposed Settlement Class readily satisfies the certification requirements of Rules 23(a) and (b)(3), as it is made up of a discrete and identifiable group of persons who purchased prescription eyeglasses in the United States from LensCrafters after being fitted with AccuFit, during a limited and defined time period.

## A. The Settlement Class Meets the Requirements of Rule 23(a)

In *Amchem*, the Supreme Court set forth the parameters of the Rule 23(a) inquiry:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Amchem Prods., Inc.*, 521 U.S. at 613. The proposed Settlement Class here satisfies each of the four requirements of Rule 23(a).

### 1. The Number of Class Members is So Numerous that Joinder is Impracticable.

Numerosity is satisfied where, as here, the proposed "class is so numerous that joinder of all members would be 'impracticable.'" *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012). Numerosity is presumed in the Second Circuit where a class consists of forty or more members. *See generally Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Settlement Class is all U.S. residents who, from September 5, 2013 to the date of the Preliminary Approval Order, purchased prescription eyeglasses in the United States from LensCrafters after being fitted with AccuFit.[8] Based on LensCrafters' records, there are approximately 16.7 million members of the Settlement Class. The members of the Settlement Class

---

[8] Excluded from the Class are LensCrafters; LensCrafters' employees, officers, and directors, as well as members of their immediate families; LensCrafters' legal representatives, heirs, and successors; and any judge, justice or judicial officer who have presided over this matter and the members of their immediate families and judicial staff.

are ascertainable and identifiable from the existing records obtained from the Defendants and the claim process set forth in the Settlement Agreement. As the Court noted in its previous Order on Class Certification, the New York, California, and Florida classes alone satisfied the numerosity requirement, and LensCrafters did not contest numerosity. ECF No. 274 at 23. Accordingly, the Settlement Class easily meets the numerosity requirement.

## 2. There Are Questions of Law and Fact Common to All Class Members.

Courts consistently recognize that the commonality requirement "does not present plaintiffs with a particularly exacting standard." *In re Air Cargo Shipping Sers. Antitrust Litig.*, No. 06-MD-1775 (JG) (VVP), 2014 WL 7882100, at *30 (E.D.N.Y. Oct. 15, 2014). "A single common question of law or fact may suffice to satisfy this requirement if the question is capable of giving rise to a common answer through a class action." *Vitamin C*, 279 F.R.D. at 99 (citing *Wal-Mart Stores, Inc. v. Duke*, 131 S.Ct. 2541, 2556 (2011). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (quotation omitted). "[C]ommon questions . . . are often present where there are legal or factual disputes pertaining to the defendants' 'unitary course of conduct,' since such questions tend to give rise to answers that are broadly applicable to the entire class." *Air Cargo*, 2014 WL 7882100, at *30 (citations omitted).

As the Court noted in its previous Order on Class Certification, common questions of fact and law arise here (regardless of the applicable state law) as Plaintiffs claim that "all class members overpaid for LensCrafters eyeglasses because LensCrafters' representations and omissions about AccuFit—that it is 'five times more precise' than traditional methods, measuring 'down to a tenth of a millimeter,' and that customers would have 'clearer, crisper vision' and 'see the world more clearly'—allowed LensCrafters to command 'a higher market price for its products than it

otherwise could have.'" ECF No. 274 at 24. To decide liability, the trier of fact would need to determine whether LensCrafters' representations, with respect to AccuFit, were false or misleading, and whether those statements caused class members to pay a price premium for their LensCrafters eyeglasses. *Id.* These are common questions, "the answers to which are apt to drive the resolution of the litigation." *Id.* (quotations omitted). The expansion of the Settlement Class to a national class covering a longer time period does not change this analysis.

### 3. Plaintiffs' Claims are Typical of Those of the Settlement Class.

The proposed Settlement Class also satisfies the test for typicality, which "focuses on whether the named plaintiff's interests align with the interests of the rest of the class." *Vitamin C*, 279 F.R.D. at 105. "The typicality criterion does not require complete symmetry between the class representative's claims and those of the absent class members." *Id.* (citing *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 625 (S.D.N.Y. 2010)). "Rather, the named plaintiff must simply raise claims that 'arise from the same course of events' as the class claims and make 'similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)); *see also Reid v. SuperShuttle Int'l, Inc.*, No. 08-CV-4854 (JG) (VVP), 2012 WL 3288816, at *4 (E.D.N.Y. Aug. 10, 2012) (typicality requirement is met where "the named Plaintiffs' claims are for the same type of injury under the same legal theory as the rest of the class" (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234. 252 (2d Cir. 2011)). "[F]actual differences in the amount of damages, date, size or manner of purchase, the type of purchaser . . . and other such concerns [that] will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class." *Air Cargo*, 2014 WL 7882100, at *31 (quoting *Sumitomo Copper Litig.*, 182 F.R.D. at 92).

As the Court noted in its previous Order on Class Certification, Plaintiffs "'allege a

common pattern of wrongdoing' related to LensCrafters' representations and omissions about Accufit, and 'will present the same evidence' based on the same legal theories to support the claims of Plaintiffs and all class members, '[t]his is sufficient to establish typicality.'" ECF No. 274 at 26 (quoting *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 346 (E.D.N.Y. 2016). So too here, the expansion of the Settlement Class to a national class covering a longer time period does not change this analysis.

### 4. The Settlement Class Is Adequately and Fairly Represented.

"Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Air Cargo*, 2014 WL 7882100, at *33 (quoting *Cordes & Co. Fin. Servs., Inc. V. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). A conflict between proposed class representatives and the Class "will not destroy adequacy under Rule 23 unless the conflict is 'fundamental' and concrete; conflicts which are merely 'speculative . . . should be disregarded at the class certification stage.'" *Vitamin C*, 279 F.R.D. at 102 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001).

No fundamental conflict exists between Plaintiffs and members of the Settlement Class here because Plaintiffs hold the same damages claims as the members of the Classes that they seek to represent: all claim to have paid a price premium for their LensCrafters eyeglasses due to the alleged misrepresentations LensCrafters made with respect to AccuFit. As the Court rightly held in its previous Order on Class Certification, the named Plaintiffs interests are not "antagonistic" to the interests of the other class members, they have fulfilled their duties as class representatives, and have proven that they are adequate representatives of the class. ECF No. 274 at 31. The fact that the Settlement Class is nationwide does not render the Plaintiffs

inadequate. *Kurtz v. Kimberly-Clark Corp.*, 14-CV-1142, ECF No. 471 at 10-12 (E.D.N.Y. June 12, 2023).

Additionally, Plaintiffs have effectively represented the interests of the proposed Settlement Class by selecting qualified Class Counsel, regularly communicating with Class Counsel regarding developments in the litigation, preparing for and attending depositions, communicating with Class Counsel regarding the terms of the Settlement, and approving those terms. Neither Plaintiffs nor Class Counsel have any interests antagonistic to those of the proposed Settlement Class. And, as this Court previously held, Class Counsel has demonstrated its experience in success in complex consumer protection class actions. ECF No. 274 at 31-35. Therefore, the adequacy of representation requirement is satisfied.

**B. The Settlement Class Meets the Requirements of Rule 23(b)(3)**

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b). *See Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006). Certification of a class under Rule 23(b)(3) requires that: (i) common issues predominate over individual issues; and (ii) the class action mechanism be superior to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). For the reasons described below, both requirements are met here.

Unlike with motions for class certification in the litigation context, a court "[c]onfronted with a request for settlement-only class certification . . . need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620 (internal citation omitted); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d at 242 ("[T]he existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis."). The court's focus instead is "on whether a proposed class has sufficient unity so that absent members can fairly be bound

by decisions of class representatives." *Amchem Prods., Inc.*, 521 U.S. at 621. The court is still required to ensure the Rule 23 requirements are met for a settlement class, but in doing so the court "must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class." *Cohen*, 262 F.R.D. at 158 (citations omitted).

### 1. Common Questions of Law and Fact Predominate.

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted).

> "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"
>
> *Id.* (quotation omitted).
>
> "In short, the question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof' and whether 'these particular issues are more substantial than the issues subject only to individualized proof.'"
>
> *Johnson*, 780 F.3d at 139 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)).

The analysis differs depending on whether the certification is sought for litigation or settlement purposes. In the former, the court must determine whether litigating the class claims will pose "intractable management problems," but in the latter these management concerns "drop out" because with settlement the "proposal is that there be no trial." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239-240 (2d Cir. 2012). In the settlement context, the predominance "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine

controversy, questions that preexist any settlement." *Amchem Prods., Inc.*, 521 U.S. at 623. As the Supreme Court has noted, in a settlement context "the predominance requirement of Rule 23(b)(3) is similar to the requirement of Rule 23(a)(3) that 'claims or defenses' of the named representatives must be 'typical of the claims or defenses of the class.'" *Id.* at n. 18 (quotation omitted). As described above in Section III. A.3, that is the case here.

This Court already conducted a detailed analysis of New York law in its previous Order on Class Certification and found that common questions of law and fact predominate for Plaintiffs' claims under New York's consumer protection statutes, N.Y. Gen. Bus. Law §§ 349 and 350. ECF No. 274 at 39-147. As the Court held, common questions of fact and law related to whether the alleged misrepresentations made by LensCrafters regarding AccuFit were false or misleading, whether those statements were material to a reasonable consumer, whether the class was injured in the form of "an overcharge" through a price premium, and the calculation of class-wide damages all predominated over any potential individualized issues in the case. *Id.* For the same reasons, the common questions of law and fact predominate for the Settlement Class applying New York law.

## 2. Class Action is the Superior Method to Adjudicate this Case.

Rule 23(b)(3) also requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23. The Court must consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*

As this Court has already found, "Here, all four factors counsel in favor of class certification." ECF No. 274 at 154. First, the Court noted that "given the low amount at stake for

an individual relying on Plaintiff's price premium theory and for eyeglasses generally, as well as 'the relative simplicity of consumer protection actions . . . the possibility of individual interests controlling the prosecution of this action is remote.'" *Id.* (quoting *In re Kind LLC*, 337 F.R.D. at 608). Indeed, individual litigants are unlikely to have the resources to engage in protracted litigation against LensCrafters, particularly given the price premium damage which has been estimated at approximately $23.28. Graber Decl. ¶ 5. Superiority is met where, as here, "it would be prohibitively expensive for class members with small claims to proceed individually." *Vitamin C*, 279 F.R.D. at 109. Second, "this case represents the consolidation of three cases," now expanded to cover a nationwide class, and there has not been other litigation to date involving the same controversy at issue here. ECF No. 274 at 154. Third, "the low amount at stake for individual plaintiffs and the fact that Plaintiffs have already been pursuing this case for approximately [six] years make the concentration of the litigation of these claims in this forum highly desirable." *Id.* And fourth, concerns about manageability are addressed by the points outlined in the predominance section above, namely, that class inquiries will predominate. *Id.* Importantly, manageability concerns are given little consideration when analyzing superiority for settlement purposes. *Amchem Prods., Inc.*, 521 U.S. at 620 (internal citation omitted); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d at 242 ("[T]he existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis.") Accordingly, because certifying the proposed Settlement Class represents "an efficient means of resolving the claims at issue," *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 354 (E.D.N.Y. 2006), the superiority requirement is satisfied.

## C. Class Counsel Should be Appointed As Settlement Class Counsel

A court that certifies a settlement class must appoint class counsel. Fed. R. Civ. P. 23(g). In appointing class counsel, the Court

"(A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

Fed. R. Civ. P. 23(g)(1).

The Court must also determine that class counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Here, the Court has already considered the 23(g) factors in appointing Cohen Milstein as Interim Class Counsel, ECF No. 35, and then in appointing Cohen Milstein as Class Counsel at the class certification stage. ECF No. 274 at 31-35. Cohen Milstein has devoted substantial time and resources to this case, and will continue to do so to ensure the Settlement is effectuated and claims are paid fairly and efficiently. Accordingly, the Court should appoint Class Counsel as Settlement Class Counsel.

## V. THE NOTICE PLAN AND PLAN OF ALLOCATION ARE REASONABLE

### A. The Notice Plan

Plaintiffs' Counsel, together with the proposed Settlement Administrator, Kroll Settlement Administration (the "Settlement Administrator"),[9] have devised a notice program and prepared mail and publication notices that fully satisfy the Rule 23(c)(2)(B) notice standards, which govern classes certified pursuant to Rule 23(b)(3). *In re IMAX Sec. Litig.*, 283 F.R.D. at 185 (notice requirements for Rule 23(b)(3) classes stricter than for Rule 23(b)(2) classes) (citing *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. at 448). Rule 23(c)(2)(B) requires the court to

---

[9] Plaintiffs submit that Kroll Settlement Administration is a highly respected claims administration group with many years of experience administering class action settlements. *See* Graber Decl. ¶ 11.

"direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.*; *see also Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 67 (S.D.N.Y. 2003) ("Although no rigid standards govern the contents of notice to class members, the notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (internal quotation marks omitted)).

As required by Rule 23(c)(2)(B), the long form and short form notices, attached respectively as Exhibits E and D to the Settlement Agreement (Graber Decl., Ex. A), state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class that is being certified; (iii) the class claims, issues, or defenses; (iv) the basic terms of the Agreement; (v) that a class member may enter an appearance through an attorney if the member so desires; (vi) that the Court will exclude from the class any member who requests exclusion; (vii) the time and manner for requesting exclusion; (viii) the binding effect of a class judgment on members and the terms of the releases; (ix) the claim filing process and a description of the Distribution of the Net Settlement Fund; and (x) the requests for an award of attorneys' fees, reimbursement of costs and Service Awards to the Class Representatives. The Notice further directs Settlement Class members to the case website and provides contact information for the Settlement Administrator.

Notice regarding a proposed settlement is adequate under both Rule 23 and due process standards if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Hall v. ProSource Techs., LLC*, No. 14-CV-2502-SIL, 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016) (citation omitted), and it can "be understood by the average class member," *Wal-Mart Stores, Inc.*,

396 F.3d at 114 (citation omitted).

In this case, the Notice Plan was prepared with the aid of an experienced Settlement Administrator and provides for widespread email and direct mail notice and a comprehensive settlement website. *See* Graber Decl. ¶ 9; Graber Decl., Ex. A ¶ 7.8. LensCrafters will compile a Settlement Class List based on good faith review of its records and provide it to the Settlement Administrator, which will enable the Settlement Administrator to email or mail short-form notice to all Class members efficiently and accurately. *See* Graber Decl., Ex. A. ¶¶7.2‑7.5. For purposes of efficiency and to limit expenses associated with administering the Notice Plan, Plaintiffs propose to email a short-form notice form to all Class members in those databases, and to physically mail the short-form notice absent a deliverable email address. *Id.* ¶¶7.5‑7.6 The short-form notice will reference the long-form notice, direct recipients to the settlement website, and include a toll-free phone number for Class members to call with any questions. *See id.* Ex. D. to the Settlement Agreement (Graber Decl., Ex. A.). Long-form notices will be mailed upon request, and Class members can request mailed materials through the settlement website as well as the toll-free number. *See id.* Courts have routinely approved similar notice plans involving both direct email/mail and a settlement website.[10] Accordingly, Plaintiffs respectfully request that the Court approve the proposed form and plan of dissemination of notice.

---

[10] *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *2 (approving notice plan that included direct mail and a settlement website); *Air Cargo*, 2009 WL 3077396, at *3 (approving notice plan that included direct mail); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 448 (approving notice plan that included direct mail and a settlement website); *see also In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.1996) (approving individual notice to class members "whose address could reasonably be located"); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 167–69 (2d Cir. 1987) (approving letter notice to reasonably identifiable class members).

### B. Distribution of the Net Settlement Fund

The proposed Distribution of the Net Settlement Fund treats all class members equitably, pursuant to the final fairness factors of Rule 23(e)(2)(D). All class members who submit a claim will receive a pro-rata share of the Net Settlement Fund. Each member who submits a claim is eligible to receive up to $50 for each set of eyeglasses purchased from LensCrafters,[11] subject to a pro rata reduction if the total claims exceed the Net Settlement Fund. In the event that at least $1 in funds per claimant remains after this first distribution, a second pro rata distribution will occur to each approved claimant. Any remaining amounts will go to *cy pres.* This method ensures every class member is treated equitably. *Nothing in the Settlement Fund will revert to LensCrafters.*

### VI. PROPOSED SCHEDULE FOR SERVICE OF NOTICE, MOTIONS FOR FEES AND SERVICE AWARDS, CLASS EXCLUSIONS, OBJECTIONS, AND FAIRNESS HEARING

As set out in the Proposed Order, Plaintiffs propose the following schedule:

| | |
|---|---|
| Last day to disseminate class notice: | As soon as reasonably practical after entry of the Preliminary Approval Order |
| Last day to file Motion for Final Approval: | 45 days prior to Final Approval (Final Fairness) Hearing |
| Last day to file Fee and Cost Application: | 21 days prior to the deadline to object to the Settlement |
| Last day for objections to Settlement or opposition to Motion for Final Approval of Fee and Cost Application | 30 days prior to Final Approval (Final Fairness) Hearing |
| Last day for Class members to opt-out of the Settlement: | 21 days prior to Final Approval (Final Fairness) Hearing |
| Last day for the Parties to file replies to any Class member objections to the Motion for Final Approval or Fee and Cost Application: | Seven days prior to Final Approval (Final Fairness) Hearing |

---

[11] This cap is related to Plaintiffs' expert's damages model, which estimates a price premium of approximately $23 per pair of eyeglasses. Graber Decl. ¶ 5

| Fairness Approval (Final Fairness) Hearing: | At least 100 days after entry of the Preliminary Approval Order |
|---|---|

This schedule is fair to Class Members. It gives Class Members as much time as reasonably practicable to review the preliminary approval papers and Settlement before deciding whether to object or opt out. And it gives three weeks for Class Members to consider the attorneys' application for fees, expenses, and Class Representative service awards before deciding whether to object to any or all of them. Accordingly, Plaintiffs respectfully request that the Court issue the Proposed Order establishing the schedule set forth therein.

## VII.    CONCLUSION

For all of the reasons stated above, Class Counsel respectfully submits that both preliminary approval of the Settlement and certification of the proposed Settlement Class are appropriate, and that the Court should appoint interim Co-Lead Class Counsel as Settlement Class Counsel.

July 31, 2023

Respectfully submitted,

*/s/ Geoffrey A. Graber*

Geoffrey A. Graber (admitted *pro hac vice*)
Andrew N. Friedman (admitted *pro hac vice*)
Brian E. Johnson (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
afriedman@cohenmilstein.com
bejohnson@cohenmilstein.com

Eric A. Kafka (SBN 5361829)

Claire Torchiana (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street
14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com
ctorchiana@cohenmilstein.com

Theodore J. Leopold (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
tleopold@cohenmilstein.com

*Class Counsel*